Dorr v. Harkness.

## GEORGE W. DORR v. GEORGE A. HARKNESS.

1. The negligence of a tenant occasioning injury to the demised premises by fire, is a *fault* within the meaning of the supplement to the Landlord and Tenant act, approved March 5th, 1874. *Rev., p.* 576, ¿ 28.

2. When a tenant permitted a fire to be maintained in a barn, in a stove, the vent of which was by a stove-pipe passing through a hole in the barn roof, it cannot be said that a judgment holding such conduct negligent was legally erroneous.

On *certiorari* bringing up a judgment of the Essex Common Pleas reversing a judgment of a District Court in Newark.

Argued at February Term, 1887, before Justices VAN SYCKEL, MAGIE and PARKER.

For the prosecutor, *James M. Trimble.*

For the defendant, *Louis Hood.*

The opinion of the court was delivered by

MAGIE, J. The action in the District Court was brought by Dorr against Harkness to recover rent reserved on a lease of land whereon stood a house, barn and outbuildings.

Harkness admitted that the rent claimed was unpaid, but denied his liability. His defence was based on the provisions of the supplement to the Landlord and Tenant act, approved March 5th, 1874 (*Rev., p.* 576, § 28), which enacts that whenever any building or buildings erected on leased premises shall be injured by fire, without the fault of the lessee, the landlord shall repair the same as speedily as possible, or in default thereof the rent shall cease until such time as such building or buildings shall be put in complete repair, &c.

The cause was tried in the District Court, without a jury, and the state of the case sent to the Common Pleas, on appeal, contained the facts found in accordance with the rule laid down in *Benedict* v. *Howell,* 10 *Vroom* 221.

It thus appeared that the barn and outbuildings on the leased premises had been burned before the rent claimed had accrued, and that the landlord had not made repairs as speedily as possible. It also appeared that the tenant had allowed a servant to maintain a fire in a stove in a room in the barn, having its vent by the stove-pipe which ran through a hole in the barn roof. The state of the case concludes thus: "The court found as facts in this cause that the fire was the result of the use of the stove used in the buildings by the tenant; that the use of the said stove was without the knowledge of the landlord and without his consent; that the defendant was guilty of negligence in allowing his hired man to put up a stove and build a fire therein; that therefore the destruction of the buildings was not without the fault of the lessee."

The judgment of the District Court was in favor of the landlord, and obviously proceeded on the ground that the statute relied on by the tenant did not apply, because the fire did not occur without his fault.

The rule of the Common Pleas reversing this judgment states "that the court below erred in law * * * in holding that the evidence showed fault of the tenant, this court being of opinion that it does not appear from the evidence that the tenant was guilty of fault within the meaning of the statute."

Since a review by the Common Pleas of such a judgment is restricted to questions of law, it is plain that when this rule speaks of evidence it intends the facts found by the court below and appearing in the state of the case and which are conclusive. Thus read, the reversal appears to have rested on one of two propositions, viz., either that negligence of a tenant causing injury to leased buildings by fire is not a fault within the meaning of the statute, or that on the facts found the tenant's conduct could not be legally considered negligent. As either proposition would sustain the reversal, both have been considered.

The first question, then, is whether a tenant's negligence,

occasioning a fire which injures the demised buildings, is a fault within the meaning of the statute.

The statute deals with the relation between landlord and tenant. When it relieves the tenant from his obligation to his landlord in case of a fire occurring without his fault, it must, in my judgment, be taken to indicate some act or omission of the tenant, which, in view of that relation, is a legal wrong. This leads to a consideration of the liability of a tenant to a landlord for injuries by fire to the demised buildings by reason of the tenant's negligence.

At common law, he in whose house or chamber a fire originated, whether by negligence or mere accident, was responsible for injuries occasioned by its spread to other premises. Lord Chancellor Lyndhurst, in reviewing the ancient authorities for that doctrine, declared it to be a " peculiarity in the common law" founded on the general custom of the realm. *Viscount Canterbury* v. *Attorney-General*, 1 *Phil.* 306. A majority of the judges of the King's Bench held that the doctrine extended to fires kindled in an owner's close. *Tuberville* v. *Stamp*, 1 *Salk.* 13.

The liability imposed by the common law was afterward restricted by legislation. Such restriction was furnished, first, by statute 6 *Anne*, c. 31, which exonerated from such liability any person in whose house or chamber any fire shall " accidentally begin," and, second, by statute 14 *Geo. III.*, c. 78, which extended the exoneration to any person " on whose estate" any fire shall " accidentally begin."

By the provisions of the common law and the statutes of Marlbridge and Gloucester, tenants were liable to the landlord for waste of the demised premises. *Moore* v. *Townshend*, 4 *Vroom* 284. This liability was said to extend to cases where demised buildings were burned, either by negligence or mischance. *Co. Lit.* 536. It seems plain that this liability was intended to be restricted by statute 6 *Anne*, c. 31, for the sixth section, which contained the restrictive clauses, was followed by a proviso in the seventh section that nothing therein con-

tained should defeat or make void any agreement between landlord and tenant.

The course of our legislation on the subject is instructive. The statute 14 *Geo. III.*, c. 78, has never been re-enacted in this state. The statute 6 *Anne*, c. 31, was entitled "An act for the better preventing mischiefs that may happen by fire." The main part of the statute was directed at preparations for preventing or extinguishing fires. One section imposed a punishment on servants who fired any house by negligence or carelessness. The section which restricted the ancient liability for injuries occasioned by the spread of a fire originating in any house, enacted its restrictions, "any law, usage or custom to the contrary notwithstanding." This statute, as a whole, has never been here re-enacted, but the sixth section, with the proviso contained in the seventh section, was early adopted in our legislation and became part of the "Act for the prevention of waste." It now forms the eighth section of that act. *Rev.*, p. 1235. It is not insignificant that the re-enactment omitted the words "any law, usage or custom to the contrary notwithstanding," contained in the original act.

It may be well argued thereon that the peculiar liability which, by the general custom of the realm of England, was imposed on every one for injuries resulting from fire originating in his house or close was never admitted to be applicable to the people of this colony and state, for otherwise it would seem that the provisions restricting that liability would have been made to apply, when re-enacted here, to all circumstances and relations. But, in fact, it was inserted in the Waste act, and so appears limited in its application to the relation of landlord and tenant. In this view the general liability for injuries resulting from fire originating in one's house or close would depend on general principles and not on a peculiarity of the common law arising out of a general custom of the mother country. But no opinion need be or is intended to be expressed on the nature or extent of the general liability.

What concerns us in the case in hand is only the liability of a tenant to his landlord for waste of the demised premises

when occasioned by fire. The adoption of section 6, statute 6 *Anne, c.* 31, into our Waste act clearly indicates that the tenant's liability was previously broader than was thought fit, and it was thereby restricted and the tenant exempted from liability whenever the fire *accidentally* began. It becomes necessary to construe this language, which, it will be observed, is precisely that of the English statute above referred to.

What was termed by Lord Denman "a singular doubt" arose on the construction of those statutes. It arose because of an opinion expressed by Sir William Blackstone in his Commentaries. His statement was, in substance, that the common law, which would have rendered a master liable for the negligence of his servant in keeping his fire, had been altered by the statute which ordained that no action should be maintained against any in whose house or chamber any fire should accidentally begin, for (he adds) "their own loss is sufficient punishment for their own or their servants' carelessness." 1 *Bl. Com.* 431.

Lord Lyndhurst, in the case above cited, commented on this construction and called attention to the fact that the Court of Common Pleas had sanctioned a recovery for injury done by a fire kindled in a field and escaping by a servant's negligence, although the statute 14 *Geo. III., c.* 78, if construed as Blackstone had construed statute 6 *Anne, c.* 31, would have been a complete defence. *Vaughan* v. *Menlove,* 3 *Bing.* (*N. C.*) 468. It did not become necessary for Lord Lyndhurst to construe either statute, but it is plain he doubted the accuracy of the construction of the commentator.

The same question was afterwards discussed in the Court of Queen's Bench on a motion to arrest judgment. The declaration which was objected to contained a count based on the making and keeping a fire in defendant's close so negligently that by the negligent conduct of defendant and his servants it escaped to plaintiff's close and injured him. The statute 14 *Geo. III., c.* 78, was applicable if construed as Blackstone had construed the previous statute. Lord Denman, Justices Coleridge and Wightman assenting, expressed the opinion of

the court in favor of the declaration. He carefully reviewed the rule of the common law and the alterations effected by these statutes, and the decision settled that the fire produced by negligence was not " accidentally " begun within their meaning, and the exoneration from liability did not extend to a fire occasioned by negligence. *Philliter* v. *Phippard,* 11 *A. & E.* (*N. S.*) 346. I do not find that the question has been again raised in England. The construction given in the case last cited was approved in *Webb* v. *R. W. & O. R. R.,* 49 *N. Y.* 420. I have not been referred to nor have I discovered other cases in this country.

The construction thus given to the words " accidentally begun " in the English statutes must, in my judgment, be given to the same words in our statute. The latter affects the relation of landlord and tenant only. The evil it designed to remedy was an. excessive and unjust liability for waste of demised premises by fire, however originating. To remedy this evil, it was sufficient to exonerate the tenant from liability for all fires occurring without some act or omission on his part, which, in view of his relation to his landlord, was culpable. The words in question, literally construed, may not relieve the tenant so far, but they will bear such a construction, and it will carry out the intent of the legislation. For these reasons I think that a fire occurring by the negligence of a tenant, and wasting the demised premises, is not a fire accidentally begun, within the meaning of section 8 of the Waste act. Such negligence is, therefore, a wrong, and constitutes a fault, within the meaning of the supplement to the Landlord and Tenant act in question in this case.

It remains to consider whether the judgment holding the tenant negligent could be reversed as erroneous in law.

Whether negligence exists is a mixed question of law and fact. *Shearm. & Red. on Neg.,* § 11 ; *Durant* v. *Palmer,* 5 *Dutcher* 544. Such questions are to be‧determined by a jury, under the direction of the court, on consideration of all the circumstances found. *Earle* v. *Earle, Spencer* 347 ; *Wood* v. *Hurd,* 5 *Vroom* 87. If the facts are found, the only question

on *certiorari* is whether there was any mistake or misapplication of the law. *Brown* v. *Ramsay*, 5 *Dutcher* 117. The facts having been conclusively determined in this case, the only question is whether the finding of negligence thereon was a mistake in law.

Negligence, in such cases, must be held to exist when there is shown an absence of such care for the safety of the demised premises as a man in the exercise of reasonable prudence would take. Looking at the facts found, I cannot say that this proposition was not that on which the District Court found the tenant to be negligent. Upon the application of that proposition to the facts, negligence might be inferred. The Common Pleas, therefore, erred in reversing, if their reversal was on this ground.

The judgment of the Common Pleas must therefore be reversed, with costs.

On account of engagements at Circuit, Mr. Justice Parker took no part in the decision of this case.