# Sophia Kelly, Admrx. of Patrick Kelly, Deceased, Plff. in Err., *v.* Charles Duffy.

In an action against a surety for the performance of a covenant in a lease to surrender the premises in as good condition as they were at any time during the term, inevitable casualty excepted, where the building leased had been destroyed by fire during the term,—*Held*, it was for the jury to determine from the evidence whether the fire could have been reasonably prevented, and that it was not error for the court to refuse to withdraw the facts from the jury.

An instruction to the jury in such action, that if they are satisfied from the evidence that the building was destroyed by fire, without any negligence or fault of the lessee or his surety, and that all the efforts which were prac-

Note.—Where there is a covenant to deliver up the premises in the same condition, the lessee, or his surety, is bound to do so on reasonable notice. Reed v. Harrison, 196 Pa. 337, 46 Atl. 415. Or the cost of the repairs made by the lessor, with the consent of the lessee, may be recovered. Darlington v. DeWald, 194 Pa. 305, 45 Atl. 57. Unless the covenant so provides, the lessee is not liable for accidental injuries to the property, and the lessor must prove negligence to recover. Earle v. Arbegast, 180 Pa. 409, 36 Atl. 923.

ticable under the circumstances were made to save the building, the verdict should be for the defendant, is not erroneous.

(Argued October 19, 1887.   Decided October 31, 1887.)

October Term, 1887, No. 223, W. D.   Error to the Common Pleas of Butler County to review a judgment in favor of defendant in an action of covenant against a surety for the performance of a lease.   Affirmed.

On June 22, 1875, Patrick Kelly, being the owner of a lot in the borough of Butler, leased the same to one J. F. Hackett for the term of five years, from April 1, 1875.   The lease was under seal and signed by Kelly and Hackett.   By its terms, Hackett was to remove the houses then on the premises leased, and, where they stood, to erect a house, according to plans then agreed upon between them, the house to be completed by April 1, 1876.   He was also to pay to Kelly a money rental of $300 each year, to be computed from April 1, 1875, to be paid quarterly in advance.   He also agreed "that he will not during the term, nor at any time, remove, destroy, or impair the house so to be erected by him on the premises, but that he will take good care of the same, and of the premises, and that at the expiration of the term he will, without any order from the said Patrick Kelly, his heirs or assigns, immediately move away from the premises, and surrender the same to him or them in as good order and condition as they were at any time during the term, ordinary decay and inevitable casualty only excepted."

Upon the same day Charles Duffy, the defendant, became the surety for Hackett for the performance of the covenants of Hackett contained in the lease from Kelly to Hackett, the contract of suretyship being as follows:

"It was at my request that Patrick Kelly gave the foregoing lease, and to assure and indemnify him and his heirs and assigns against any default or failure of the lessee, John F. Hackett, I, by these presents, am held and firmly bound unto him, the said Patrick Kelly, in the sum of $2,000, upon condition, however, that if the said John F. Hackett shall and does well and truly perform and fulfil all his covenants in the foregoing lease, this obligation shall become null and void; but otherwise it shall remain in full force and virtue.   And if the

said John F. Hackett shall not well and truly perform and fulfil any of his covenants aforesaid, the said Patrick Kelly, his heirs or assigns, may at once proceed against me for the recovery of his or their damages, without having proceeded therefor in any manner against the said John F. Hackett.

"Witness my hand and seal the same day.

"Charles Duffy." [Seal.]

Hackett, under his lease, erected the house he had agreed to build upon it and then assigned the lease to Duffy, who had possession of it by his subtenant Hackett until the expiration of the term. During this time, in September, 1878, the house built by Hackett was destroyed by fire and was not rebuilt. At the expiration of the term the lot was turned over to Kelly.

This action of covenant was brought by Kelly against Duffy, to recover from him the rent for the term and the damages sustained by the lessor upon account of the burning of the building and the failure to replace it: first, by reason of the possession of Duffy as assignee of Hackett for the term; and second, upon Duffy's contract of suretyship. Duffy had a set-off of $1,822.42 for goods sold by him to Kelly. Upon the trial it was agreed that this paid the rent of $1,500, leaving a credit still of $322.42 as against the covenant to rebuild if Duffy was liable upon that covenant under the facts in the case.

After the suit had been brought, and before the trial, Patrick Kelly, the plaintiff, died, and Sophia Kelly, his administratrix, was substituted as plaintiff.

The court, McMichael, J., charged the jury, *inter alia,* as follows:

"I am not disposed to take the view that was taken by the counsel for the defense entirely—that there was no contract of insurance in this case. I think that it was a contract of insurance; that the property should be given back—surrendered up in as good condition as it was at any time during the term, with the exception,—and the exception in this case is inevitable casualty. If, then, that building burned by unavoidable casualty, it is within the exception, and Mr. Duffy would not be bound to rebuild nor deliver the premises up with the building on it; and if that destruction of the building was no unavoidable casualty, then he would be bound to rebuild.

"If you find that that building burned down by fire, and that the fire occurred from some source that could not have been guarded against in the ordinary, reasonable, careful use of the building, then that fire would be considered an inevitable fire. And if it could not be extinguished reasonably, and if, under the circumstances, it were not practicable under the excitement of the moment and as matters were, then you would have the accident complete as an inevitable accident.

"On the other hand, if the fire occurred from carelessness, negligence, or want of proper attention, such as a careful man would give in the oversight of his own property, the accident then would not be inevitable—the fire would not be inevitable. When you come to inquire as to whether this was an inevitable casualty you will take into consideration all the facts of the case.

"It is not disputed here but that the building was perfectly built; and when I say perfectly, I mean that it conformed entirely to the building intended in the contract; that is, that it was according to the plans and specifications that are mentioned in the contract. And if it were so built and this fire occurred without any fault, negligence, or blame of any kind on the part of Mr. Hackett or Mr. Duffy, then it would be inevitable in its commencement; and if the structure of the building were such that it would burn so rapidly that it could not reasonably be put out, and if, under the circumstances, you find that it could not have been put out, then the destruction of the building was inevitable. Now how was that from all the evidence you have in this case? You have the evidence that Mr. Hackett was in occupancy of the house. Of course, neglect on his part would be chargeable to Mr. Duffy in this case. Want of care on his part would be chargeable to Mr. Duffy as assignee of the term.

"There has been some evidence offered on the subject as to how this fire occurred. What there is in the evidence on that subject is for you.

"Then take all the facts of this case just as you have them,— the character of the building at the time of the fire; the character of its occupancy, so far as the evidence shows you that occupancy, and all about it,—and determine this question, Has the defendant, Charles Duffy, satisfied you by the weight of the evidence that this fire was not a negligent fire; that it was one that could not have been reasonably protected

against under the circumstances as they were in this case?' The
burden of proof is upon Mr. Duffy to so satisfy you. That in-
volves in this case the proof of a negative; that is, that it was
not negligence; that it was not carelessness; that it was not of
that character that could have been protected against. Indi-
viduals are not always obliged to prove a negative with that
same kind of positive evidence that the law requires, as a rule,
in proving an affirmative proposition, because, from the very
nature of the case, it is very often impossible to produce such
evidence of a negative. You can always, or at least almost al-
ways, find some direct evidence of a positive fact. You can
prove the fact that this fire did exist; that it did burn; that is
a positive fact. To prove the negative fact, that it was not
negligence, not carelessness, is a different matter somewhat,
and it does not require the same degree of proof; but the burden
of proof is upon Mr. Duffy in this case, and you should be able
to find from the weight of the evidence, under all the circum-
stances, that this fire was not negligence; that it did not occur
by reason of carelessness in the occupants of that building, or
that it was not intentional on the part of the occupants; other-
wise, you should find for the plaintiff. But if you do so find
that it was not negligent, not careless, not intentional (that is,
that there was no fault to be attributed to the occupant of the
house, Mr. Hackett, or Mr. Duffy), and if you further find
that the fire was of that character when discovered that it could
not or was not practicable under the circumstances to put it out
and save the building, then your verdict should be for the de-
fendant. The whole case, then, you will understand, turns upon
that feature of it: Was this fire inevitable? That is, was it
without any fault or blame on the part of the occupants of that
house, or Mr. Duffy; and was it of that character that it could
not be extinguished reasonably when it was discovered? If you
come to the conclusion that it was not an inevitable casualty
under these instructions, then you will go to the next feature
of the case, and you will inquire what the amount of the dam-
ages was. That is, under the evidence, entirely for you.

"The amount of damage, if the plaintiff is entitled to re-
covery at all, is measured simply by this rule: The difference
in value of that lot as it would have been with that house on it
on the 1st day of April, 1880, and the value of that lot as it was
without the house upon it on that same day. You heard the

evidence from which you will make up your mind on that subject, if you come to that question. If you find that the plaintiff is entitled to recover damages, and reach the conclusion as to the difference in value, then you should add interest upon that difference in value from that 1st day of April up until the day of finding your verdict."

The plaintiff submitted the following points:

1. That the burden of proof is upon the defendant to show that the fire could not reasonably have been prevented. He has failed to do so and the verdict of the jury must be for the plaintiff.

*Ans.* This point is refused. It is for the jury to determine from all the evidence whether the fire could reasonably have been prevented. There was evidence given by both the plaintiff and defendant relating to the question of whether the fire could reasonably have been prevented; and all this evidence must be considered in determining this question. (First assignment of error.)

2. Under all the evidence in the case the verdict of the jury should be for the plaintiff for the value of the building at the time of the expiration of the lease from Kelly to Hackett, and the rentals unpaid, less the credits.

*Ans.* This point is refused. It is for you to decide, from the evidence under the instructions given you, whether the plaintiff is entitled to recover, and if so, how much. (Second assignment of error.)

The defendant submitted the following point:

That if the jury are satisfied from the evidence that the building was destroyed by fire without any negligence or fault on the part of Hackett or Duffy, and that the usual and ordinary effort was made to save the building, this is all that is required by law of the defendant or Hackett; and the verdict should be for the defendant.

*Ans.* This point is affirmed, if by the expression "that the usual and ordinary effort was made to save the building" is understood to mean all the efforts which were practicable, under the circumstances, were made to save the building. You understand that the point uses the expression "that the usual and ordinary effort was made to save the building." I do not know what that is, but every practicable effort under the circum-

stances ought to have been made to save the building when it was discovered to be on fire; but really upon that subject there does not seem to be very much dispute in this case; that is, that the building was of that character that when once on fire it was very difficult to save it. Of course, you should take into consideration all the circumstances; what the opportunities were to extinguish the fire and everything of that character in connection with that question. (Third assignment of error.)

The jury returned a verdict for defendant, upon which judgment was entered; and plaintiff took this writ, specifying, for error, the refusal of plaintiff's points and the affirmance of defendant's point, as above.

*C. Walker* and *T. C. Campbell,* for plaintiff in error.—When the defendant covenants to do a certain thing, subject, however, to one or more exceptions, and his covenant is not kept, upon action brought against him for failure to perform, upon proof by the plaintiff of the failure, the defendant must show that it was occasioned by one of the causes contained in the exception.

This is the rule in the case of common carriers, when a special contract of shipment is made, and in the case of bailees. Forbes v. Dallett, 9 Phila. 515; Patterson v. Clyde, 67 Pa. 500; Colton v. Cleveland & P. R. Co. 67 Pa. 211, 5 Am. Rep. 424; Humphreys v. Reed, 6 Whart. 435; Whitesides v. Russell, 8 Watts & S. 44; Chouteaux v. Leech, 18 Pa. 232, 57 Am. Rep. 602; The Niagara v. Cordes, 21 How. 7, 16 L. ed. 41; Western Transp. Co. v. Downer, 11 Wall. 133, 20 L. ed. 161; Memphis & C. R. Co. v. Reeves, 10 Wall. 176, 19 L. ed. 909; Story, Bailments, § 574.

The same rule applies in case of landlord and tenant. Hoy v. Holt, 91 Pa. 88, 36 Am. Rep. 659.

The insurance contract of Hackett did not exclude a specific thing, such as fire or flood or tempest or lightning. If any of these exceptions had been mentioned in the contract, the defendant, upon suit brought upon it, would have been discharged from liability upon showing that the specific casualty guarded against was the cause of the loss; but he had in this case guarded only against "inevitable casualty," and whether the loss was within the exception or not depends upon all the circumstances surrounding it.

The whole difference between a contract of insurance having an exception of a specific thing, such as fire, tempest, or earthquake, and a contract having an exception depending upon the circumstances of the case is shown in the case of Patterson v. Clyde, 67 Pa. 500. See also Hays v. Kennedy, 41 Pa. 378, 80 Am. Dec. 627; and Whitesides v. Russell, 8 Watts & S. 44.

In all these cases the question was how far the defendant must go with his proof to escape liability. They are irreconcilable, except upon the ground that where the insurance applies to fire, a particular thing, the particular thing only need be proven by the defendant; while in another, which has no definite fact to rest upon in the writing, the defendant must show that the circumstances bring the case within the exception.

What circumstances, then, were necessary to be shown by the defendant to relieve himself from liability? To answer this question it is necessary to determine the meaning of the words "inevitable casualty."

Webster defines the word "inevitable" as "something that cannot be avoided" and "casualty" as "an inevitable event— not to be guarded against."

Unavoidable and inevitable are in legal, as well as in common, parlance, synonymous. They are the acts of God. This means any accident produced by physical causes which are irresistible, such as lightning, storms, perils of the sea, earthquakes, inundations, sudden death or illness. Story, Bailments, §§ 25, 318, 330; Fish v. Chapman, 2 Ga. 349, 46 Am. Dec. 393; Neal v. Saunderson, 2 Smedes & M. 572, 41 Am. Dec. 609; Crosby v. Fitch, 12 Conn. 410, 31 Am. Dec. 745.

This court has broadened the meaning of the words to some extent, but even under its decisions "inevitable accident" is such as no human foresight could avert—that is, so far as the parties to be charged are concerned. Beach v. Parmeter, 23 Pa. 197; Hays v. Kennedy, 41 Pa. 378, 80 Am. Dec. 627.

The decisions of the courts are not only with us in this matter, but the reason of the law also.

Proof is expected from the party more likely than his adversary to be cognizant of the fact and to be possessed of the means of proof. Sharswood's Starkie, Ev. p. 589; Whitesides v. Russell, 8 Watts & S. 44; Zerbe v. Miller, 16 Pa. 488.

*Lewis Z. Mitchell* and *Charles McCandless,* for defendant

in error.—The jury found from the evidence that the building
was destroyed by fire without any negligence or fault on the
part of Hackett or Duffy, and that every practicable effort under
the circumstances was made to save the building. This finding.
the plaintiff in error now seeks to disturb.

On this point we cite the syllabus of Howeth v. Anderson,.
78 Am. Dec. 538, 25 Tex. 557: "Lessee is not liable in dam-
ages for accidental loss of demised premises by fire under a
covenant to redeliver them at the expiration of his term in as.
good order as when received, usual wear and tear and unavoid-
able accidents excepted;" citing Warner v. Hitchins, 5 Barb..
666, 669; Halloway v. Lacy, 4 Humph. 468. See also Hays v.
Kennedy, 41 Pa. 378, 80 Am. Dec. 627; Pennsylvania R. Co.
v. Peters, 18 Pittsb. L. J. N. S. 66; Taylor, Land. & T. §§ 65,.
465, 468.

PER CURIAM:

We find no error in the rulings of the learned judge below in
his answers to the points. Those presented by the plaintiff asked
the learned judge to withdraw the facts from the jury, which,.
under the evidence, he could not do. The single point of the
defendant was properly answered. It was a case for a jury,.
and it went to them under correct instructions.

Judgment affirmed.