# Harry Darlington *v.* W. H. DeWald, Paul Wuesthoff and Walter Wuesthoff, trading as DeWald, Wuesthoff & Company, Appellants.

*Landlord and tenant—Covenant as to the condition of property—Repairs —Damages.*

Where a tenant defaults in his covenants to return the leased property at the end of the term in as good condition as it was when he took possession, and the landlord, before the end of the term, and with the tenant's permission, enters and makes very extensive repairs and changes in the property, and the tenant makes no repairs, the landlord is entitled to recover from the tenant such part of the expenditure as was necessary to restore the property to the condition it was in when the tenant received the property from him.

Argued Oct. 25, 1899.   Appeal, No. 79, Oct. T., 1899, by defendants, from judgment of C. P. No. 1, Allegheny Co., June T., 1897, No. 123½, on verdict for plaintiff.   Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL, DEAN, FELL and BROWN, JJ.   Affirmed.

Assumpsit to recover costs of repairs to leased premises. Before STOWE, P. J.

The court charged in part as follows:

[As you are well aware, the plaintiff leased the premises in question to the defendants for the term of five years; one provision of the lease was that, at the termination of the lease, they should return the property to the plaintiff in as good condition as they found it, ordinary wear and tear excepted.   Well, of course, that provision of the lease is plain enough.   They found it in a certain condition, and as tenants they had a right to change it from time to time to suit the emergencies of their business, and as long as they did not interfere substantially

with the freehold so as to destroy the building, the landlord had no right to interfere. He did not interfere in this case with anything that was done; whether he consented to it or not is entirely immaterial so far as the case before you is concerned. The defendants saw fit to go on and make improvements and changes. They had a right to do that under the evidence, because the landlord did not object, and so far as the evidence shows, the changes themselves, if done carefully and in a proper way, were not such as would materially injure the building for the purposes for which it was intended. No complaint is made on that score, but the allegation is that, in making these changes (which we will assume they had a right to make), they did it in such a negligent, careless and unworkmanlike manner that they cut the building to pieces so as to substantially injure it and put it in such shape as to require the repairs, or some of them, that were made subsequently. It is alleged the building was in a worse condition at the time the defendants left it, or when the repairs were made, than it was at the time they took possession.] [6] . . . .

It had been used previous to that time for a brewery and was worn more or less. The defendants' testimony is that it was then in a very bad condition, unsafe, and that they did make extensive repairs at the time. Those repairs were made, but they were not bound to keep the repairs that may have been made in good condition, but simply to hand the buildings over afterwards to the plaintiff in as good condition as it was when they got possession of it, and previous to the repairs that they had made. They made those repairs, but the contract was to hand the building over, not with the repairs kept in perfect condition, but just as good as it was when Mr. Darlington handed over the property to them.

[Now did they do that? If they did not, to what extent was this property damaged by reason of their treatment of it during the term that they had possession? They were bound to return it in as good condition as they found it. They were not bound to make repairs under the terms of the lease; they could have left the building stand just as they got it without any repairs. But if they injured the building, if they caused it to be in worse condition, ordinary wear and tear taken into consideration, than it would have been if they had done what they ought

to have done, they are responsible for the condition and are bound to pay the landlord, Mr. Darlington, an amount that would put the building in as good condition as it was when they got it. That is all we can say upon the subject.] [7]

[The first question is, what was the condition, under the testimony, of the building at the time the defendants got it? And then, what was the condition at the time these repairs were made by the plaintiff? They were not made against the wishes of the tenants; that is apparent. They were made previous to the termination of the lease. That is not material, so far as this case is concerned; they were made with the implied consent of those in possession, and the simple question is, so far as made, were they necessary to put the premises in the condition they were at the time the defendants got possession of them? If they were, then the plaintiff is entitled to recover a verdict for the fair value of what it cost, not for all he did, nor for what he may have seen fit to do, but for just whatever was necessary to put the building in the condition it was in at the time the defendants got possession from the plaintiff.] [8]

[It is said there is difficulty in arriving at a conclusion, that this testimony on the part of the plaintiff is not specific. Well, that is a matter for the jury, it is not a question of law. Questions where there are controverted facts are difficult for the jury to determine with any great distinctness, but that is a duty that the law devolves upon the jury to perform. If a man is sued for an injury to another person, it is hard to tell how much he has suffered in body and in estate, and yet we submit those cases to the jury and give them such evidence as we have, and they draw their own conclusion according to the testimony. There is evidence that tends to show damage, more or less, done to these premises. How reliable that may be is for the jury, and the value of it is for the jury.] [9]

Verdict and judgment for plaintiff for $1,200. Defendants appealed.

*Errors assigned* among others were (6–9) above instructions, quoting them.

*F. C. McGirr*, with him *John Marron*, for appellants.—There is no breach of a covenant to repair until the term is ended.

So long as the tenant is in the occupancy he may repair and thus keep his covenants: Colhoun v. Wilson, 27 Gratt. (Va.) 639; Hoskinson's Exrs. v. Bradford, 1 Pittsburg, 165; Wood's Landlord and Tenant, sec. 370; Palethorp v. Bergner, 52 Pa. 149; Sheppard's Touchstone, 173; Taylor's Landlord and Tenant, sec. 361.

In the present case the whole burden of the charge to the jury is directed to the breach of the covenant that defendants would return the premises to the plaintiff at the end of the term in as good condition as when received. Now the premises were in much better condition at the end of the term than when received, therefore this covenant was not broken, and the whole charge was erroneous: 3 Sedgwick on Damages, sec. 990; Williams v. Williams, L. R. 9 C. P. 659.

It must be remembered that the repairs were made by the landlord during the continuance of the term. Under such conditions the rule of damages is held to be the injury to the reversion from the want of repairs, and not the cost of the repairs: Taylor on Landlord and Tenant, sec. 368; 3 Sedgwick on Damages, sec. 990; 3 Sutherland on Damages, p. 135; Colley v. Streeton, 2 B. & C. 273; Ardesco Oil Co. v. Richardson & Tack, 63 Pa. 162; Earle v. Arbogast, 180 Pa. 409.

*A. M. Brown*, with him *Thos. M. Brown*, for appellee.—During the existence of the tenancy the landlord may protect his reversionary interest, and may maintain actions for injuries which would or do affect his interest, whether such injuries be committed by the tenants, undertenants, or by strangers, and whether the term shall have expired or not: Taylor's Landlord and Tenant, sec. 173; Star v. Jackson, 11 Mass. 519; French v. Fuller, 23 Pick. 104; Baxter v. Taylor, 4 B. & Ad. 72; Bower v. Hill, 1 Bing. (N. C.) 549; Little v. Pallister, 3 Greenleaf, 6; Austin v. Hudson River R. R. Co., 25 N. Y. 334; Geer v. Fleming, 110 Mass. 39; Mayor, etc., of Cartersville v. Lyon, 69 Ga. 577; Anderson v. Dickie, 26 Howard's Practice, 105; Sparks v. Bassett, 49 N. Y. Super. Ct. 270.

In the case of the tenant's agreement to make repairs, the landlord being out of possession is not in general in a position to make repairs himself. Usually his measure of damages will be the injury to the reversion: 1 Sedgwick on Damages, sec. 210;

Turner v. Lamb, 14 M. & W. 412; Payne v. Haine, 16 M. & W. 541. But where the tenant leaves the premises out of repair the measure of damages is the cost of putting them into repair, and not the depreciation in value of the property: Clow v. Brogden, 2 Man. & G. 39; Watriss v. Cambridge Bank, 130 Mass. 343; 3 Sedgwick on Damages, sec. 990; Beach v. Crain, 2 N. Y. 86. It was held in Williams v. Williams, Law Reports 9, C. P. 659, that the defendant was liable to pay as much as would put the premises in the same state of repair as when he took them.

OPINION BY MR. JUSTICE GREEN, January 2, 1900:

The amount of the verdict in this case, being about one seventh of the whole amount claimed by the plaintiff in his statement and by his testimony, proves that the jury allowed the plaintiff what they found, under the charge of the court, to be the cost of making those repairs to the property which it was the duty of the defendants to make, but which the plaintiff made in consequence of the default of the defendants to do so. There was a large amount of testimony as to what was done, and the character of what was done, by both the plaintiff and the defendants, on the property during the currency of the lease. The defendants certainly did make considerable repairs, and doubtless some betterments, soon after they went into possession. They claimed that the property was in a very dilapidated condition, and that the repairs and alterations which they then made were indispensably necessary to its occupancy as a brewery. It is equally certain that the plaintiff, during the last year of the term, made very extensive repairs and changes in the condition of the property, the cost of which was, as he claimed and testified, almost $9,000. It is also certain that for a large amount of this bill the defendants were not legally responsible, as neither of their covenants required them to do either the kind or amount of work that was done by the plaintiff. There is no complaint that the defendants did not make necessary repairs in the first instance at their own proper cost, and hence, the contest is entirely upon the covenant that they would yield up the possession of the premises at the end of the term " in good and sufficient repair as when received." On this subject it was claimed that when the defendants, the Wuesthoffs, left the premises and accepted a release

from all further rent charges, on September 29, 1896, and before that time, they had suffered the property to become greatly injured, dilapidated and worn out, and had put in such improvements and additions and had done such other work as to amount to waste and destruction of the premises, and to expose the buildings to manifest danger of falling walls and other injuries. The plaintiff further claimed that the property was in a much worse condition of repair when he commenced making the changes and repairs, than it was when the defendant took possession, and that the repairs he was obliged to make were absolutely necessary to save the buildings from destruction. . On the contrary, the defendants claimed that the property was in much better condition when they left it than it was when they took possession, and that it did not require any repairs to put it in as good condition as when they entered. These contentions raised disputed questions of fact as to which there was much testimony, and of a very conflicting character. Of course it had to be submitted to the jury, and it was their duty to dispose of it. We have very carefully considered the charge of the learned court below and the answers to points, and we are of opinion that there was no error in the action of the court upon these subjects. The learned trial judge gave very clear instructions to the jury, explaining with much preciseness and entire correctness the very questions upon which it would be necessary for them to pass. He explained fully the meaning of ordinary wear and tear, the character of the repairs which the defendants were required to make, in order to preserve the property in the same condition as when it was received, and left to them exclusively the determination of the question whether the defendants had performed their covenant in this respect. In defining particularly what question they must decide he said, speaking of the defendants: " They made those repairs, but the contract was to hand the building over, not with the repairs kept in perfect condition, but just as good as it was when Mr. Darlington handed over the property to them. Now did they do that? If they did not, to what extent was the property damaged by reason of their treatment of it during the term that they had possession. They were bound to return it in as good condition as they found it. They were not bound to make repairs under the terms of the lease; they could have left the building stand just as they got it without any

repairs. But if they injured the building, if they caused it to be in worse condition, ordinary wear and tear taken into consideration, than it would have been if they had done what they ought to have done, they are responsible for the condition, and are bound to pay the landlord, Mr. Darlington, an amount that would put the building in as good condition as it was when they got it. The first question is, what was the condition, under the testimony, of the building at the time the defendants got it? And then, what was the condition at the time these repairs were made by the plaintiff? They were not made against the wishes of the tenants; that is apparent. They were made previous to the termination of the lease. That is not material so far as this case is concerned; they were made with the implied consent of those in possession, and the simple question is, so far as made, were they necessary to put the premises in the condition they were at the time the defendants got possession of them? If they were, then the plaintiff is entitled to recover a verdict for the fair value of what it cost—not for all he did, nor for what he may have seen fit to do, but just for whatever was necessary to put the building in the condition it was at the time the defendants got possession." It seems to us this instruction was perfectly correct in every legal sense. If the defendants were bound by their covenant, as they certainly were, to put the property in as good condition as it was when they took possession, the question to be determined was, had they done this, and if they had not, and the plaintiff had thereby been compelled to do it by reason of their default, he certainly was entitled to recover from the defendants the money he was obliged to pay for that purpose. The court was careful to say to the jury that the plaintiff could not recover the whole amount he expended, but only that proportion of the amount which he was obliged to expend to restore the property to its condition as it was when the defendants received the property from him. As we understand the law, this was the exact question the jury had to decide, and they did decide it. The plaintiff expended in the works and repairs that he made $8,994.19, and the jury allowed him $1,200, as representing that portion of his expenditure which they considered the defendants ought to have incurred.

As to the fact that the plaintiff entered upon the premises and made repairs before the expiration of the lease, what the

court said on that subject was perfectly correct. He did enter upon the premises and do that work before the end of the term, but he did so most manifestly with the consent of the defendants. There is not a scrap of testimony showing that they or any of them ever made the slightest objection to what he was doing. They could not help but see and know just what he was doing, and by making no objection, and looking quietly on while the work was being done, their consent is necessarily implied. Moreover, two of them, the Wuesthoffs, left the premises voluntarily in September, 1896, several months before the end of the term, and settled with the plaintiff for all claims for rent of the premises. The other defendant, who was a relative of the plaintiff, remained in possession. None of the defendants did anything towards restoring the property to its original condition, and the plaintiff was certainly not bound to wait until the end of the term and take the risk of the falling of the walls, if there was such a risk, before doing the necessary work to preserve the building. In this view of the case the authorities cited for the defendants, to the effect that the landlord could not enter and make repairs until after the end of the term, are not applicable. Of course, he could do so with the consent of the tenants. And the authorities to the effect that no action could be brought to recover the amount expended in making the necessary repairs until after the term had expired are not applicable, because the present action was not brought until after the term had expired.

On the question of damages the learned court below charged that if the plaintiff was entitled to recover, he could recover the cost of that part of the repairs which the defendants failed to make, and which the plaintiff was obliged to make on account of their dereliction, and as that would be the amount of the damage he would really sustain, we know of no reason why that should not be the correct measure of the damages he was entitled to recover. We are not referred to any Pennsylvania, nor indeed, to any American, authority which holds that the true measure is the value of the injury to the reversion, and therefore we do not see any sufficient reason for adopting that measure. The latter rule may be applicable where, the landlord being out of possession, and the tenant having left the property without the proper repair being made, the landlord brings his

action for nonrepair, but where he has made the repair himself, the cost of the repair would be his proper measure of damages. In 3 Sedgwick on Damages, sec. 990, and in Watriss v. Cambridge Bank, 130 Mass. 343, it was said that where the tenant leaves the premises out of repair, the measure of damages is the cost of putting them into repair, and not the depreciation in the value of the property. The assignments of error are all dismissed.

Judgment affirmed.