## Mumma v. Club Plan of America

*Metzger, Wickersham & Knauss,* for petitioner.
*Compton, Handler & Berman,* for respondent.

PER CURIAM, July 30, 1955.—This matter is before us on defendant's petition for a rule to open a judgment of $1,372 obtained by plaintiff on a warrant of attorney to confess judgment contained in a lease. Plaintiff filed an answer to defendant's petition, waived the issuance of the rule, whereupon depositions were taken.

The question for decision is whether defendant-tenant under its covenants in the lease assumed *absolute* liability for the cost of replacing a burned out boiler with a new boiler. The lease provided, inter alia, as follows:

"1. No waste shall be committed; and at the end of the said term the demised premises shall be delivered in as good condition as at the commencement thereof, ordinary wear and tear and unavoidable damage by fire, tempest and lightning excepted."

"4. At the expiration of the term the demised premises will be restored at the option of the Lessor in the same condition in which they were at the commencement of the term, and the cost of the said restoration shall be paid by the Lessee, which cost will be treated as additional rent due and owing under the terms of the lease."

"9. The Lessee agrees to keep the premises in a good condition of repair. . . . Should the Lessee fail to comply with the provisions of this clause of the lease, the Lessor may enter the premises and make said repairs . . . at the expense of the Lessee and said expense thus incurred may also be collected as additional rent under the lease."

"15. All damages or injuries done to the said premises other than those caused by fire and by ordinary wear and tear or by the acts or omission of the landlord shall be repaired by the Lessee herein. And the Lessee covenants and agrees to make said repairs upon five days' notice given to him by the Lessor, and if he shall neglect to make said repairs or com-

mence to make the same promptly or within ten days after said notice as given to him, the Lessor shall have the right to make the said repairs at the expense and cost of the Lessee. . . ."

On December 26, 1953, the boiler in the leased premises at 1139 Mulberry Street, Harrisburg, burned out. Plaintiff-lessor was promptly notified of this fact and advised an employe of defendant where he could obtain a plumber to repair the damage. That plumber was not available. Plaintiff then contacted another plumber, Mr. Eshenaur, and told him to make an inspection of the boiler. Eshenaur did so on December 27, 1953, and advised plaintiff that the boiler was irreparably damaged. Plaintiff then directed the plumber to install a new boiler. Installation was begun on Monday, December 28, 1953, and was completed by Tuesday evening, December 29th. The manager and vice president of defendant Club Plan, Charles Lester, was not advised of the situation until Monday, December 28th, having been in New Jersey over the Christmas holiday until that time. Plaintiff later in the week advised defendant's general manager that defendant was responsible for the cost of the repairs. Defendant did not pay for the boiler. Subsequently plaintiff paid for the same and confessed judgment against defendant in the sum of $1,872, as above stated.

Plaintiff contends that the evidence in this case clearly shows that the damages to the boiler were due to the negligence of defendant and its employes in permitting the water to become low in the boiler, that there is no evidence that there was unavoidable damage by fire or that the damage was caused by ordinary wear and tear or by the acts or omissions of the landlord and that therefore *absolute* liability is imposed upon defendant-tenant to pay for a *new* boiler under its covenant to repair and to return the premises at the

end of the term in as good condition as at the beginning thereof with the exceptions above noted.

Defendant contends that the damage to the boiler was caused by unavoidable fire, that the cause of the fire was due to ordinary wear and tear on the boiler which was from 13 to 25 years old, that for years, plaintiff, having owned the premises since 1940, knew that the water pressure in the building was very poor and that the soft city water was causing rust, mud and corrosion to settle in the pipes leading from the mains to the boiler, that there is no evidence of negligence on the part of the defendant in the operation of the boiler, that under defendant's covenants in the lease it is not required to replace the old boiler with a new one and that the question of responsibility for the damage should be submitted to a jury.

Plaintiff, in an affidavit of default filed with the lease at the time judgment was confessed, made the following averments:

". . . said defendant Lessee did recklessly and negligently permit the water in the heating boiler in said premises to become low while heat was maintained therein, thereby destroying and ruining said boiler and damaging the heating system. . . ."

"That pursuant to the request of the defendant, by its duly authorized agent, Charles E. Lester, plaintiff, employed W. C. Eshenaur to replace said boiler with one of like character. . . . That by said request, through its duly authorized agent, Charles E. Lester, the defendant waived all notices in respect to the making of said repairs required by said Lease and also waived the privilege of making said repairs itself. . . ."

Defendant in its petition to open judgment denied negligence and liability, as above stated, and also denied that plaintiff was authorized by it to install a *new* boiler to replace the old one or that it was given the required five days' notice under the lease to make

the repairs or that it waived notice or any privileges under the lease.

As stated, plaintiff contends that defendant is *absolutely* liable under the lease to replace the old boiler with a new boiler. Plaintiff relies principally on McKinley v. Jutte & Co., 230 Pa. 122 (1911), and Brinton v. School District of Shenango Township, 81 Pa. Superior Ct. 450 (1923). In the McKinley case defendant agreed to "surrender the same (premises) at the end of the term in as good order as they now are, reasonable wear and tear and the acts of God alone excepted". A fire destroyed the building and in denying liability defendant-lessee contended that the fire was of unknown origin, that it was not caused by any negligence or default on defendant's part and that it was an act of God within the meaning of the lease. The Supreme Court in a per curiam opinion affirmed the opinion of Judge Davis of the Common Pleas Court of Allegheny County who held that the fire was not in legal contemplation an act of God and that neither this defense nor "want of negligence or default" was available to defendant. The lower court differentiated the McKinley case from Kelly v. Duffy, 8 Sadler 214, 11 Atl. 244 (1887), in which the lease contained a clause: ". . . and to surrender the same in as good order and condition as they were at any time during the term, ordinary decay and inevitable casualty only excepted." In the McKinley case the lower court held that the terms "inevitable casualty or accident" and "acts of God" are not synonymous and that "inevitable casualty" is a broader and more comprehensive term than "act of God" and that since the more comprehensive term did not appear in defendant's lease, defendant was not relieved from liability from a loss by fire by the "act of God" exception in its lease.

In Kelly v. Duffy, supra, the Supreme Court affirmed per curiam the Common Pleas Court of Butler County,

which had instructed the jury that if they were satisfied from the evidence that the building was destroyed by fire without any negligence or fault on the part of defendants, and that the usual and ordinary effort was made to save the building, this was all that was required by law of defendants and that the verdict should be in their favor.

Plaintiff also relies, as does defendant, upon Brinton v. School District of Shenango Township, 81 Pa. Superior Ct. 450 (1923). In that case an agreement had been entered into whereby plaintiff leased to defendant a building to be used for school purposes, defendant agreeing to make certain changes and "to return the property in as good shape as when received". Defendant installed a heating system which causes a fire. At the trial its negligence was submitted to a jury which found for plaintiff. The Superior Court, speaking through Judge Keller, said at pp. 454-55:

"Under the power given it by statute the defendant *might have expressly covenanted* in the lease to repair the building *and rebuild it* in the event of its destruction by casualty, in which event, it would have been obliged to restore the building if destroyed by casualty, whether the result of negligence or accident: Hoy v. Holt, 91 Pa. 88; Gettysburg Electric Ry. v. Electric L., H. & P. Co., 200 Pa. 372; McKinley v. Jutte, 230 Pa. 122. *The agreement in this case was not so broad;* it was to return the property in as good shape as when received. Such an agreement binds the lessee to restore the building, or pay the damage, *if injured by fire as the result of his negligence,* though *not,* if destroyed by accident *without negligence on his part:* Darlington v. DeWald, 194 Pa. 305; Kelly v. Duffy, 8 Sadler 214; Bostwick v. U. S., supra, p. 68; Dorr v. Harkness, 49 N. J. L. 571, 10 Atl. 400; Priest v. Foster, 69 Vt. 417, 38 Atl. 78; Tilden v. Tilden, 13 Gray (Mass.) 103; Armstrong v. Maybee, 17 Wash. 24, 48 Pac. 737;

Burke v. Pierce, 83 Fed. 95 (certiorari denied, 168 U. S. 711). Even in the absence of an express covenant on the subject the law generally implies a covenant on the part of the lessee so to treat the demised premises that they may revert to the lessor unimpaired except by usual wear and tear, and uninjured by any wilful or negligent act of the lessee: Earle v. Arbogast & Bastian, 180 Pa. 409, 417; Long v. Fitzsimmons, 1 W. & S. 530, 532; Bostwick v. U. S., supra, pp. 66, 68; and this implied covenant extends to the loss of buildings by fire caused by the negligence of the lessee: Earle v. Arbogast, supra; Dorr v. Harkness, supra; Bostwick v. U. S., supra.

*"As the verdict of the jury fixes the defendant's negligence* as the cause of the fire which injured the leased building, we are of opinion that the defendant was bound to repair the damage resulting therefrom to the leased property or pay the loss sustained by the lessor on account thereof." *

Judge Keller's opinion was cited with approval by our Supreme Court, speaking through Mr. Justice Patterson in Loeb v. Ferber, 346 Pa. 348, at pp. 351, 352 (1943).

Defendant relies upon Girard Trust Co. v. Tremblay Motor Co. et al., 291 Pa. 507 (1928). There a three-story garage was completely destroyed by fire and one of the questions the court had to determine was the responsibility of lessee-defendant under the terms of the lease. The Supreme Court, speaking through Mr. Chief Justice von Moschzisker, considered this matter at pp. 517 and 518, as follows:

"There is nothing in the lease which *expressly* requires either the landlord or the tenant to restore the building on the demised premises in case of its destruction by fire. The contract provides that lessee

---

* Italics throughout are ours unless otherwise noted.

promises to 'deliver up the premises in good order and repair . . . reasonable wear and tear and damage by accidental fire excepted'; again, that, in the event of destruction or damage by fire, the tenant, at the behest of the landlord or the contractor in charge of restoration, is to move his goods and chattels in the demised premises from place to place as required; and further, that the lessee agrees 'to make any and all repairs, both interior and exterior to the demised premises . . . which may become necessary during the term of this lease or any renewal thereof.' One of these provisions suggests that, in case of destruction by fire during the term of the lease, the landlord is to do the rebuilding, another, that the tenant is to rebuild; *but taking the lease as a whole, none of them amounts to a covenant binding either lessor or lessee to restore the building.* The covenants by the lessee to repair or keep in repair, standing alone, might impose such an obligation on him (36 Corpus Juris 145, Section 782; McKinley v. Jutte & Co., 230 Pa. 122, 79 Atl. 244; Hoy v. Holt, 91 Pa. 88) ; *but this is not so in a case like the present, where* it is *expressly provided* in the contract that '*damage by accidental fire* [shall be] *excepted*', and where the lease also contains other references and special provisions on the subject of rebuilding in case of fire, none of which explicitly places that burden on the lessee. . . ."

In the instant case "unavoidable damage by fire" is expected. That there was a fire appears in the deposition of Ben D. Rice, who testified that in answer to a question by Mr. Clouser: "Do you smell smoke?" he, Rice, said: "Not exactly smoke, it smells like something real hot. It just smelled like a radiator was overheated or hot metal or something like that. . . . We went towards the boiler room and there is a grating that goes down to the floor, *we noticed smoke coming through there* and Mr. Clouser ran down and

pulled the switch on the oil burner." Plaintiff's plumber, Eshenaur, testified that when he inspected the boiler on December 26, 1953, he opened the fire doors and flue doors "and the *heat was terrific. You just couldn't get in to see what was going on,* but with the flashlight I could see the back section had quite a crack in it". The next morning after the boiler had chilled Eshenaur observed that "instead of one (crack) there was *a crack in every section of the boiler*" and he concluded that it was ruined. He also testified that when the float, which turns off the water and shuts off the electricity, gets stuck "nothing happens *but burn up your boiler*".

The tenant's covenants in the instant case were *not* unconditional or without exceptions. They do not expressly require the tenant to furnish a new boiler in the event the old one was damaged or destroyed. "The agreement in this case was not so broad; it was to return the property in as good shape as when received." Therefore, under the facts in this case we think defendant's liability must depend upon whether it was negligent, as pointed out by Judge Keller in Brinton v. School District of Shenango Twp., 81 Pa. Superior Ct. 450, 455, supra. Plaintiff seems to have recognized the applicability of that decision because in his affidavit of default he alleged that defendant *negligently* permitted the boiler to become overheated and that this was the cause of the damage. Likewise, in his answer to defendant's petition to open the judgment, plaintiff averred "that the damage to said boiler was caused entirely by the *negligence* of the defendant, its agents, servants and employes in permitting the water level in said boiler to become dangerously low and in maintaining fire under said boiler with the water level dangerously low and in not making the repairs if any were required to maintain the water at a proper level in said boiler".

Defendant denies that it was negligent. The depositions disclose that defendant's witness Rice testified he flushed the boiler daily for about three months prior to and on the very morning the boiler was damaged and removed a substantial portion of rust and muck on each occasion.

We think the issue of negligence raised by plaintiff and by the depositions should be submitted to a jury under the authority of Brinton v. School District of Shenango Township and Girard Trust Co. v. Tremblay Motor Co. et al., supra. A determination of this issue will throw light also upon the question whether or not defendant is entitled to claim exemption from liability for the cost of the new boiler on the theory that the damage to it was caused by "ordinary wear and tear and unavoidable damage by fire. . . ." Having reached this conclusion, it is unnecessary to consider defendant's additional contention that it was not given five days' notice by plaintiff to make the required repairs to the boiler.

And now, July 30, 1955, the rule granted to show cause why the judgment entered in this case should not be opened is made absolute, the said judgment is hereby opened and defendant let into a defense.