## ∴ 1 Long *against* Fitzimmons.

An action of account render will lie upon a contract of lease by the landlord against the tenant to recover that portion of the profits of the property leased, which, by his contract, he was bound to render as rent.

If a tenant sell the share of the profits of the demised premises which the landlord is entitled to, without his consent, he thereby becomes personally liable for the price, although the person to whom he sells becomes insolvent; and this may be recovered in the action of account render.

So if the tenant of a mill, leased on the shares, do the work so badly for a customer as to deprive himself of the right to recover compensation for it, yet he must account to the landlord for his portion of the price which he would have been entitled to, if the work had been well done.

If there be no stipulation between the parties to a lease, on the subject of repairs, the tenant is bound to keep the premises in repair.

ERROR to the Common Pleas of *Union* county.

James Fitzimmons against Samuel Long and Jacob Steinberger.

This was an action of account render in which the plaintiff thus set out his cause of action.

" Samuel Long and Jacob Steinberger, late of said county, yeomen, were summoned to answer James Fitzimmons of a plea in account; for that the said James, at the county aforesaid, on the 1st day of April 1832, leased and demised to the said Samuel and Jacob a certain grist-mill, situate in Penn township, Union county aforesaid, and delivered possession thereof on said day, to them, the said Samuel and Jacob then and there agreeing and promising to deliver and account to the said James for two-thirds of all the tolls that they should receive at said mill during the time they should occupy the same, under the lease aforesaid; and the said James avers, that the said Samuel and Jacob entered into said premises on the day and year aforesaid, and held possession of the same, under the lease aforesaid, for a long time, to wit, from the 1st day of April 1832, until the 1st day of March 1834, and took all the tolls and profits of said mill, during said time, to render a reasonable account thereof to the said James on demand; yet the said Samuel and Jacob, though often requested, or either of them, have never rendered their reasonable account of the tolls and profits of said mill, but refuse so to do, to the damage of the said James $500 ; and thereof he brings suit," &c.

The defendants pleaded that they were not tenants of the plaintiff, and that they had fully accounted.

There was no written contract between the parties, but witnesses were called by the plaintiff to prove the admissions of the

[Long v. Fitzimmons.]

defendants that they had leased from the plaintiff upon the terms of dividing the profits in the proportions of two-thirds to the plaintiff, and one third the defendants were to have. That they had met together for the purpose of settling their accounts, when it appeared that the defendants had sold all the toll grain, as well the plaintiff's share as their own, and that in doing so bad debts were made, which the plaintiff required the defendants to account for, and they refused: that they had ground a quantity of flour for an individual which had not stood inspection, and he therefore refused to pay for grinding. This was a subject of dispute. The defendants also claimed an allowance for repairs, which the plaintiff refused to allow. The defendants also alleged that they had not rented from the plaintiff, but from him and the guardians of the heirs of David Fitzimmons; and they gave some evidence on this subject. On the whole case the court below (Lewis, President) referred the facts to the jury, with direction that in making their verdict they should be governed by the following legal principles:

"That the plaintiff cannot recover without proving the contract set out in the declaration; but the jury may find the existence of such contract from the testimony of Samuel Roush and John Snyder.

That notwithstanding the testimony of Henry C. Eyre, the jury may find from the other evidence, that it was the understanding of all parties, that the plaintiff should receive the rent under his contract, one-half in his own right, and the other half in trust for the heirs of David Fitzimmons.

That if the contract laid in the declaration be proved, the defendants are liable for plaintiff's share of all the grain sold to individuals, *whether collected or not, unless in case where the sales* were made with the assent of the plaintiff.

That if the tolls in the case of C. M. Straub were *compounded*, and an agreement made to take 31 cents in money per barrel of flour made, instead of the *tolls* in *grain*, entered into between defendants and Straub, this may be claimed in this action as *tolls* under the declaration. That if defendants failed to recover the debt from Straub, in consequence of having, through their own mismanagement, made bad flour, this furnishes no reason why they should not account for the amount of that claim.

That when nothing is said in the lease about repairs, the tenant is bound to keep the premises in repair."

These instructions of the court were all assigned for error.

*Slenker* and *Miller*, for plaintiff in error.
*Greenough*, for defendant in error.

The opinion of the Court was delivered by

ROGERS, J.—The jury might well find from the testimony to

[Long v. Fitzimmons.]

which the court refers, the existence of a contract of lease.   The
testimony may be reconciled, on the supposition that the contract
with the plaintiff was the one under which the defendants took
possession; and if so, it was not competent for them to dispute
his title, when he calls for an account of the profits.   By the con-
tract, the defendants were to have one-third, and the plaintiff two-
thirds of the tolls to be received in kind, at a rate well understood
and regulated by the custom of the country.   If, therefore, the
defendants undertook to sell the plaintiff's share of the tolls with-
out his consent, they rendered themselves personally liable, not-
withstanding the individuals to whom it was sold afterwards be-
came insolvent.   So if the tolls in the case of Straub were com-
pounded, and an agreement made to take a certain stipulated price
in money in lieu thereof, it may be recovered as tolls under this
form of declaration.   And if the defendants failed to recover the
debt from Straub, because by any mismanagement they made in-
ferior flour, this is no reason why they should not account to the
plaintiff for the price agreed upon.   The arrangement, which is a
customary one, where there is a large quantity of grain to grind,
was for the benefit of all parties, and for this reason it was proper
to confine the plaintiff to the stipulated price, although it would
be unreasonable that he should be compelled to take less.   He
has a right to charge it as so much toll, for which it is the equi-
valent; but in estimating its value, the jury ought not to be per-
mitted to exceed the amount which the defendants, who acted in
good faith, agreed to receive.   No reason has been given for a
deduction on account of the loss occasioned by the defendants'
default.   If it had been caused by any thing wrong in the con-
struction of the mill or dam, it would alter the case; but it can-
not extend to a deduction occasioned by their own negligence or
want of skill.

The court was right in instructing the jury that if nothing is
said in the lease about it, the tenant is bound to keep the premises
in repair.   A tenant is bound to commit no waste, and to make
fair and tenantable repairs, such as putting in windows or doors
that have been broken by him, so as to prevent waste and decay
of the premises; but not to make substantial and lasting repairs, such
as to put on new roofing: (2 *Esp. N. P.* 590).  He is not liable for
general repairs, *Horsefall* v. *Mother*, (*Hall's N. P. C.* 7); nor is he
compellable to restore premises, if burned down, or become ruinous
by any other accident, without any default on his part.   And in
all cases there is an implied *assumpsit* arising out of the relation
of landlord and tenant, to use the premises in an ordinary and
proper manner.   *Powley* v. *Walker*, (5 *Term Rep.* 373);   *Chee-
tham* v. *Hampson*, (4 *Term Rep.* 318); 2 *Atk.* 388; 3 *Atk.* 518.   If a
tenant chooses to put permanent repairs on the leased property,
without the consent of the landlord, he cannot charge them in an
account with his landlord.   In the evidence, though nothing is

said about repairs, except in the contract with the guardian of the children of David, yet this cannot affect the case: the jury have found, that the defendants entered on the enjoyment of the premises under the contract with the plaintiff. Besides, we discover no proof that the defendants paid any thing for the repairs. It would rather seem that they were paid by the plaintiff.

It is said that an action of account render will not lie. It is a general rule that account will not lie for rent reserved on a lease; but this must be understood of a certain rent, and not as here, where the amount reserved is uncertain, and consequently where an account on oath may be necessary to ascertain the amount received.

Judgment affirmed.