Rev. Cornelius Earle, Appellant, *v.* Wilson Arbogast and Morris C. Bastian, partners, trading as Arbogast & Bastian.

*Landlord and tenant—Repairs—Waste—Destruction by fire or accident.*

Generally, in the absence of an express covenant on the subject, the law implies a covenant on the part of the lessee so to treat the demised premises that they may revert to the lessor unimpaired except by usual wear and tear, and uninjured by any wilful or negligent act of the lessee; but this implied covenant does not extend to the loss of buildings by fire, flood or tempest, or enemies which it is not in the power of the lessee to prevent; and there is no implied covenant that the lessee shall restore buildings which have been destroyed by accident without fault on his part.

*Landlord and tenant —Negligence—Burden of proof.*

A lease was in parol for one year, with no agreement to repair or to deliver the premises in good order and condition at the end of the term. The premises were used by the tenants for the purpose for which they had been leased, and for the purpose for which the lessor had himself fitted them with machinery and used them. The only new appliance used was a rendering tank which exploded, injuring the premises. An action was brought by the landlord against the tenants to recover damages for the loss caused by the explosion. *Held,* (1) that the mere fact of the explosion did not throw upon the tenants the burden of proving that they were not negligent; (2) that the burden of proof was upon the landlord throughout the trial.

*Practice, C. P.—Trial—Charge of the court.*

An inadequate presentation of the case, when the omission to charge leaves the jury without direction on important questions involved, or which plainly tends to mislead them, is ground for reversal; but this does not apply to an omission in not calling the attention of the jury to some features of the case which counsel at the time did not deem of sufficient importance to mention.

Argued Feb. 2, 1897. Appeal, No. 492, Jan. T., 1896, by plaintiff, from judgment of C. P. Lehigh Co., June T., 1895, No. 25, on verdict for defendants. Before GREEN, WILLIAMS, MITCHELL, DEAN and FELL, JJ. Affirmed.

Trespass by lessor to recover damages from lessees for injuries to buildings while in their possession under the lease. Before ALBRIGHT, P. J.

At the trial it appeared that the premises in question had been leased by the plaintiff to the defendants by parol for one year, with no agreement to repair or to deliver the premises in good order and condition at the end of the term. The property had been used by the lessor as a soap factory, and this use was continued by the defendants. The only new appliance which the defendants used was a rendering tank which exploded and caused the injuries for which suit was brought. It was claimed by the plaintiff that the explosion was caused by the vent pipe of the tank becoming clogged. It was also averred by him that the tank was not strong enough to withstand the pressure of steam that was put upon it.

The court charged in part as follows :

Considering the testimony on the part of the plaintiff and of the defendant it can be taken as a fact that an agreement was reached by which Mr. Earle let to Arbogast & Bastian the building in question for the period of one year, the term to begin about the beginning of February, 1895, at a rental of $15.00 a month, and that shortly afterwards the defendants went into possession of these premises, and, it appears, entered upon the business of trying fats, and that they put into the building what has been termed in this trial a "tank" to be used for that purpose; it would seem that the business they were engaged in at the time we are now considering was the rendering of fat from offals of the meat from their butchering establishment—not the rendering of first class or clean tallow or lard, but the utilizing of the scraps and odds and ends of the flesh, etc., and winning the fat contained in those materials.

In the contract of letting there was no provision that the defendants should return the building in as good condition as it was when they went into possession, reasonable wear and tear

excepted, or anything of that sort.   [The building, while in the possession of the defendants, was seriously injured and for that injury the plaintiff seeks to recover damages here.   The position of the counsel for plaintiff is that even if Arbogast & Bastian were not in fault; that if, even without any negligence on their part, this building was wrecked, the owner can recover damages for the injury to the building.   He contends that the law is that when one becomes the tenant of a building, and nothing is said as to returning it to the owner in the same condition in which the tenant receives it, the tenant must nevertheless restore it in the same condition in which he receives it, and that if he does not do so he is liable for any injury the building may have sustained.   We rule that point against the plaintiff and say that the defendants are not liable for the injury to this building unless it is proved that it was wrecked or injured by the negligence or default of the defendants.] [4] It appears from the testimony that the explosion which caused the injury to this building occurred on February 8, 1895.   It further appeared that on that day the defendants, through Mr. Eastman, who was employed by them, were engaged in the business of trying fat in this building; that he put the scraps into this tank, and had steam in the boiler, which, by means of a pipe, was connected with the tank, and that the steam was turned on and into the tank, and that between 12 and 1 o'clock of that day the head of the tank—the tank, it seems, stood on end—blew out, and the flying pieces did some injury, and the concussion and force of the air did other injury, and according to the testimony the building was seriously damaged.   As I have already said to you, Arbogast and Bastian are not required to pay for the injury to the building, although the building was in their possession as tenants, unless it is proved that they were negligent in its use.   I may mention here in passing that it is an admitted fact in the case that after the explosion Arbogast & Bastian abandoned the building and did not occupy it thereafter.

The plaintiff must recover in this case if he establishes the fact that the defendants were negligent, and he can recover on no other ground; if no negligence is shown then it must be taken that this was an accident, unfortunate for both parties, and not provided against by contract, and the plaintiff cannot

recover damages from the defendants for the resulting injury. . . .

The injury to this building and this machinery resulted from the blowing out of the head of this tank. The tank has been described to you as a tubular iron construction, some 42 or 43 inches in diameter, and that it stood about 48 inches in height; one of the witnesses said that the sides were of wrought iron, of a certain thickness, and that the head was of cast iron about three quarters of an inch thick. Was the defendant guilty of negligence in having that tank of the strength it was, and operating it as he did? It appears that this tank had a manhole in the top which was used to throw in the material, and that it had a hole in the bottom which was used to take out the refuse after the fat had been fried; it also appears that at the time it was in operation there was a vent or escape pipe leading out from the tank of half an inch in diameter, and which was used to relieve the pressure of the steam in the tank—the steam, as I have already stated to you, came through a pipe from the boiler, which was 12 or 14 feet from the tank. . . .

All the testimony as to the pressure of steam that was used, if I remember correctly, is that of Eastman and of Bickley; the latter was there at the very time of the explosion; Eastman, who was operating it, had left the building to go to his dinner, and was gone five or seven minutes when the explosion occurred; Eastman, as I recollect it, said that the steam pressure he had on was not over 45 or 50 pounds, and I think Bickley says that the steam gauge, which it seems he looked at—and which I presume was at the boiler—showed 45 or 50 pounds. [It has been stated to you that this vent, or half-inch escape pipe, might have been closed. But there is no proof that it was closed, or that it got clogged up, and you cannot guess that it was closed or clogged up. The man in charge left for five or seven minutes. There is, however, no evidence from which you could find that if the man in charge had his eyes off the tank for five or seven minutes that that would be negligence. Therefore, gentlemen, I discover no evidence from which you could find that there was negligence in the manner in which the tank was used.] [8] [There is still, of course, the question as to whether this tank was strong enough to withstand the pressure of steam that was put upon it; and that, in the

end, resolves itself into a question as to the construction of this tank. Nobody has testified that 45 or 50 pounds pressure of steam is too much to turn into a tank used for trying fat. But, of course, it ought to be strong enough to stand the force that is applied to it. So we say to you, gentlemen of the jury, that the only question of negligence that you can consider, and which you could possibly find against the defendant, will be as to whether this tank was too weak—whether it was defectively constructed—and that inquiry must be confined to the head of the tank, because nothing else broke.] [9] . . . .

[It has been argued to you that the pressure on the head of the tank was different because there was this material in 'the tank. Nobody, however, has said that the steam coming in contact with this fatty material creates any gases which would make a greater pressure, and it is for you to determine whether that does make any difference. If you throw into a tank different materials, and the combination does not work any chemical changes evolving powerful gases, it strikes me that the fact that those materials are in the tank will not affect the pressure; the pressure might in fact be a little less than if the whole space were occupied by steam. If it fits you can apply this kind of reasoning when you come to pass upon the testimony of Mr. Collum, or to that of any other witness who has testified that he has knowledge about boilers but does not know anything about tanks. Mr. Collum said, I think, but I will not state it as a fact that he did say so, as I may not remember correctly, that a tank with a head such as this was said to have been, would in his opinion stand a pressure of 75 pounds, and I think he said that the safe working pressure would be 18 or 20 pounds. Gentlemen of the jury, that is all a matter for you, but there is some danger that you might be misled as to this matter. If prudent and careful inspection and examination finds that a construction is strong enough to withstand a pressure of 70 pounds ought it to be said then that the party using it was negligent in putting on a pressure of 45 or 50 pounds? When a witness says that although it will stand a pressure of 75 pounds a pressure of 18 or 20 would be a safe pressure you ought to take that expression as the witness made it; if it withstands a pressure of 70 pounds it will not burst under a pressure of 20; it would not burst with a pressure of 30; it would not burst with

a pressure of 60. But to be on the very safe side better not raise the pressure above 18 or 20 ; if you were using a rope and you had tested it and found that it would carry 70 pounds, and you then put a strain of 50 pounds upon it, it strikes me that no one could say justly that you were reckless and negligent, even though some one might think that in order to be on the extreme safe side you ought only to put on a strain of 20.] [10]

Plaintiff's points and answers thereto were as follows :

1. If the jury find that the property in question was leased by the defendants from the plaintiff for the period of one year; that the defendants put into the building the rendering tank which · exploded and caused the damage to plaintiff's property, and if the defendants took possession of the premises, and that this rendering tank exploded while said premises were in the possession and occupancy of the defendants and during the term of said tenancy, and caused the damages complained of, the plaintiff is entitled to recover, although it be not shown that the explosion occurred by reason of any negligence on part of defendants. *Answer :* Negatived. [1]

, 2. Where there is a leasing of premises for a year by parol without any express covenant to surrender the premises to the lessor by the lessee at the end of the term in the same condition in which they were at the time the tenants took possession of the same, reasonable wear and tear only excepted, and where the premises are destroyed during the term in any manner not the act of God or the public enemy, the tenant is liable to the lessor for damages as for permissive waste. *Answer :* Negatived. [2]

3. The uncontradicted evidence in the case being that the defendants leased the premises in question from the plaintiff by parol, without any special covenants, for the period of one year from February 1, 1895, and took possession of the premises in pursuance thereof, and put in place the rendering tank which afterwards exploded, and that, while the premises in question were in the possession and use of the defendants, the said rendering tank exploded and caused the damage to plaintiff's property complained of in this case, the plaintiff is entitled to recover in this action the damages sustained by him by reason of said explosion, if the jury find that, after said explosion and before the bringing of this suit, the defendants abandoned and sur-

rendered said premises to the plaintiff without restoring the leased premises to the same condition in which they were at the time they took possession.  *Answer:* Negatived. [3]

Defendants' points and answers thereto among others were as follows:

3. There can be no recovery in this case, unless it appears that the explosion occurred by reason of the negligence of the defendants or their employees.  *Answer:* Affirmed. [5]

4. The burden of proving negligence in this case is on the plaintiff, and if he has not satisfied you by proof stronger than all the opposing proof of the defendants that the accident occurred by reason of the negligence of the defendants or their employees there can be no recovery.  *Answer:* Affirmed. [6]

5. The mere fact that the explosion occurred is not sufficient to warrant the jury in finding that it resulted from the negligence of the defendants or their employees.  In order to enable the plaintiff to recover there must be evidence of negligence beyond that arising from the mere fact of the occurrence of the explosion.  *Answer:* Affirmed. [7]

Verdict and judgment for defendants.  Plaintiff appealed.

*Errors assigned* were (1-10) above instructions, quoting them; (11) that the charge was not a full, fair, adequate and impartial presentation of the plaintiff's case to the jury.

*John Rupp* and *Edward Harvey,* with them *A. N. Ulrich,* for appellant.—At common law, where premises are injured or destroyed from any cause not the act of God or the public enemy during the term and while in possession of the tenant, the tenant is liable as for permissive waste, whether guilty of negligence or not, although there are no covenants to that effect.

This rule has not been changed in Pennsylvania: Long v. Fitzimmons, 1 W. & S. 530; Hitner v. Ege, 23 Pa. 305; Kline v. Jacobs, 68 Pa. 57; Wheeler v. Crawford, 86 Pa. 327; Moore v. Weber, 71 Pa. 429; Hazlett v. Powell, 30 Pa. 293; Bussman v. Ganster, 72 Pa. 285; Magaw v. Lambert, 3 Pa. 444; Dyer v. Wightman, 66 Pa. 425; Workman v. Mifflin, 30 Pa. 362; Fisher v. Milliken, 8 Pa. 111; Hoy v. Holt, 91 Pa. 88; Leavitt v. Fletcher, 10 Allen, 121; Phillips v. Stevens, 16 Mass. 238; Paradine v. Jane, Aleyn, 26; Horner v. Leeds, 2 Shars-

wood & Budd's Leading Cases in Law of Real Property, 90; Parrott v. Barney, 2 Abb. U. S. 196.

The burden of proving negligence on the part of defendants did not rest in the first instance and throughout upon the plaintiff: Sullivan v. R. R., 30 Pa. 234; Laing v. Colder, 8 Pa. 479; Del., Lack., etc., R. R. v. Napheys, 90 Pa. 135; Phila. & Reading R. R. v. Anderson, 94 Pa. 351; Woodruff v. Painter, 150 Pa. 91; Logan v. Matthews, 6 Pa. 417.

The question of negligence was not fully, fairly and adequately submitted to the jury: Penna. Canal Co. v. Harris, 101 Pa. 80; Washington Mut. Fire Ins. Co. v. Rosenberger, 3 W. N. C. 16; Lerch v. Bard, 177 Pa. 197; Reichenbach v. Ruddach, 127 Pa. 564; Burke v. Maxwell, 81 Pa. 143; R. R. v. Layer, 112 Pa. 414; R. R. v. Killips, 88 Pa. 405.

*Milton C. Henninger* and *Robert E. Wright*, for appellees.— The tenant is liable to his landlord for an injury to the building on the premises caused by his negligence or that of his servants. But the evidence must show that the injury was caused by such negligence: 12 Am. & Eng. Ency. of Law, 713; Jackson & Gross' Landlord and Tenant, sec. 964; Lothrop v. Thayer, 138 Mass. 466; U. S. v. Bostwick, 94 U. S. 53.

The burden of proving due care and want of negligence is on the defendant in but very few exceptional cases which have been carefully defined and are well understood: Odell v. Solomon, 1 Northeastern R. 408; Brown v. Gilmore, 92 Pa. 40; Whitaker v. Canal Co., 87 Pa. 34; Allen v. Willard, 57 Pa. 374; McCully v. Clarke & Thaw, 40 Pa. 399; Ry. v. Gibson, 96 Pa. 83.

The omission to charge more fully upon the evidence (no instructions being asked for) is not necessarily error, the substance and general tenor of the charge being correct: Grantz v. Price, 130 Pa. 415; Kurtz v. Haines, 15 Atlan. 716; Lehigh Valley R. R. v. Brandtmaier, 113 Pa. 610; P. & R. R. v. Getz, 113 Pa. 214; Fox v. Fox, 96 Pa. 60; Menges v. Muncy Creek Twp., 1 Penny. 179; Sayer v. Schroeder, 2 Penny. 79; Ott v. Oyer, 106 Pa. 7; Reeves v. D., L. & W. R. R., 30 Pa. 454; Burkholder v. Stahl, 58 Pa. 371.

OPINION BY MR. JUSTICE FELL, March 22, 1897:

Generally in the absence of an express covenant on the sub-

ject the law implies a covenant on the part of the lessee so to treat the demised premises that they may revert to the lessor unimpaired except by usual wear and tear, and uninjured by any wilful or negligent act of the lessee.  The implied covenant does not however extend to the loss of buildings by fire, flood or tempest, or enemies, which it was not in the power of the lessee to prevent, and there is no implied covenant that the lessee shall restore buildings which have been destroyed by accident without fault on his part: Jackson and Gross' Landlord and Tenant, in Pennsylvania, sec. 964, 965; Taylor's Landlord and Tenant, sec. 343; Cooley on Torts, p. 335; Long v. Fitzimmons, 1 W. & S. 530; United States v. Bostwick, 94 U. S. 53.

Tenants by the curtesy and in dower were responsible at common law, and tenants for life and for years whose estates were created by the acts of the parties, were responsible under statute as for permissive waste until relieved by the statute of 6 Anne, chap. 31, where the property was destroyed by unavoidable accident, not the act of God or the public enemy.  The statute of 6 Anne, chap. 31, which relieved the tenant from liability for the consequences of accidental fires has never been in force in this state, and it has been formally adopted by few if any of the other states, except New Jersey.  Chancellor Kent, 4 Kent's Com. 82, says : " Perhaps the universal silence of our courts upon the subject of any such responsibility of the tenant for accidental fires is presumptive evidence that the doctrine of permissive waste has never been introduced and carried to that extent in the common law jurisprudence of the United States." In U. S. v. Bostwick, supra, it was held that the implied covenant of the tenant is not to repair generally, but so to use the property as to make repairs unnecessary as far as possible, and that it is a covenant against voluntary waste only.  It is said in the opinion by WAITE, C. J. : " It has never been so construed as to make a tenant answerable for accidental damages nor to bind him to rebuild if the buildings are burned down or otherwise destroyed by accident."  The statement in the opinion in Long v. Fitzimmons, supra, that a tenant, where there is no covenant to that effect, is not bound to restore buildings that have been burned down or become ruinous by other accident without default on his part may be a dictum only, but it is in

harmony with the trend of decisions of the courts of other states and of the federal courts, and it has been accepted and acted upon by the courts of this state, and it is a correct statement of the law.

There could be no recovery without proof of the defendants' negligence, and the burden of proof rested upon the plaintiff. The lease was in parol, for one year, with no agreement to repair or to deliver the premises in good order and condition at the end of the term. No new or different use was made of the building by the tenants. It was used by them for the purpose for which it had been leased, and for which it had been fitted with machinery and used by the lessor. The only new appliance used was the rendering tank which exploded. In the use of the property leased the defendants were under an implied duty not to negligently injure it. The standard of their duty was reasonable care. The mere fact of the explosion did not throw upon them the burden of proving that they were not negligent. The burden of proof was with the plaintiff throughout the trial. He was not bound in the first instance to prove more than enough to raise a presumption of negligence on the part of the defendants. Proof of the explosion and of the attendant circumstances might have furnished sufficient ground for a reasonable inference of negligence to have made out a prima facie case, but he could not rest his case upon a bare presumption based only upon the fact that the explosion occurred. The answers to the third, fourth and fifth points affirmed these propositions and are free from error.

The assignments which complain of the charge cannot be sustained. An inadequate presentation of the case, when the omission to charge leaves the jury without direction on important questions involved, or plainly tends to mislead them, is ground for reversal. In this case the charge was clear and full. The omission now complained of was in not calling the attention of the jury to some features of the case which counsel at the time did not deem of sufficient importance to mention, and which may have been discovered only by a critical analysis of the charge made since the trial.

The judgment is affirmed.