## Reilly Motors, Inc. v. Burroughs Corp.

Before Forrest, P. J., Honeyman and Smillie, JJ.

*Raymond M. Seidel,* for plaintiff.

*Arthur Lefkoe,* for defendant.

SMILLIE, J., June 25, 1964.—This case is before the court by agreement of counsel for plaintiff and defendant at a pretrial conference at which time the parties requested that the court en banc resolve the legal questions involved first, after which a specially appointed board of arbitrators would determine what money damages, if any, might be due plaintiff.

The questions of law concern the interpretation of a lease agreement dated October 30, 1959, for premises 239-41 East Lancaster Avenue, Ardmore, formerly a new car showroom. Defendant lessee made extensive alterations, changes and improvements necessary for highly technical electronic work under contract for the United States Government. It was understood that alterations of an extensive nature to the premises would be made when the lease was executed. Defendant

has now vacated the premises and plaintiff seeks to recover, under the terms of the lease, for damages allegedly caused by the negligence of defendant and by its failure to properly restore the premises. Defendant contends it has no duty to restore the premises to their former condition.

Plaintiff categorizes its damages generally into three broad headings:

1. Damages by negligently made alterations and improvements such as to the footings of the building, the ceilings, walls, flooring, heating system and macadam driveway;

2. Damages resulting from the removal of lights, fixtures, doors and windows and the failure to replace them;

3. Damages resulting to the premises by the removal of adjuncts of alterations and improvements and leaving useless remains to be removed at the plaintiffs' expense such as wiring, transformers, and the transformer vault of a high voltage electrical system.

The two pertinent paragraphs of the lease are that lessee shall:

"9 (b) Keep the demised premises clean and free from all ashes, dirt and other refuse matter; replace all glass windows, doors, etc., broken; keep all waste and drain pipes open; repair all damage to plumbing; keep the same in good order and repair as they are now, reasonable wear and tear and damage by accidental fire or other casualty not occurring through negligence of Lessee or those employed by or acting for lessee alone excepted. The Lessee agrees to surrender the demised premises in the same condition in which Lessee has herein agreed to keep the same during the continuance of this lease."

"31 Anything contained herein to the contrary notwithstanding, Lessee shall at its own cost and expense maintain the interior of the demised premises and

Lessee shall have the right and the privilege is hereby given it to make such repairs, alterations and improvements to the interior thereof as it shall deem necessary in the conduct of its business and Lessee shall have the right to remove any and all such alterations and improvements at its own expense and shall also in such event, at its own expense restore the premises substantially to the same condition in which they were prior to the making of such improvements, reasonable wear and tear thereof and damage by the elements excepted, save, however, that such repairs, alterations, additions or improvements, if to the principal structures of the buildings, shall not be made without the written permission of the lessor but such permission shall not be unreasonably withheld. For the purpose of clarity, principal structures of the building shall be construed to mean any or all bearing walls, beams or support columns in the demised premises. In the event lessee's business shall require repairs, alterations or additions to the principal structures as above defined, Lessee hereby agrees to submit to Lessor plans of proposed changes for Lessor's approval, which approval by Lessor will not be unreasonably withheld."

It seems obvious, from reading clause 31 of the lease, wherein it provides in part:

"Lessee shall have the right to remove any and all such alterations and improvements *at its own expense* and shall also in such event *at its own expense restore* the premises . . ." that the lessor intended and the lessee agreed to return the property in useable, tenantable condition, removing any improvements or alterations which substantially changed the complexion of the building or which made the premises less generally tenantable than it had been at the time of the lease. It requires the lessee to "restore" the premises to substantially the same condition as prior to making the changes. *"Restore"* means to do more than return the

property uninjured; it means to replace and do over things which might have been changed that could destroy the original desirability of the building. (Italics supplied.)

Burroughs Corporation needed to make major and minor changes in the building. It put a false ceiling in the building and supported it by hooking supports into the plaster lath rather than beams causing the original ceiling to sag and crack. It dug fill away from the perimeter of the building for the purpose of laying lines, negligently causing the footings and walls to crack. It installed air conditioning units making holes for ducts, then removed the units leaving the holes and ducts. It removed the original lighting system and put in a system of its own; then, however, it removed its own system leaving the building devoid of a lighting system.

The court is aided by the language set forth in Earle vs. Arbogast, 180 Pa. 409 (1897), which outlines the duty of a lessee in the *absence* of a lease. Therein certain premises were leased for one year with no agreement to repair or to deliver the premises in good order and condition at the end of the term. The court said that in the absence of an express covenant the law implies a covenant on the part of the lessee to treat the demised premises so that it may revert to the lessor unimpaired except by usual wear and tear, and uninjured by any wilful or negligent act of the lessee. We conclude that the intent of the parties in the instant case was to do more than required of the lessee by implied covenant of the law.

Under paragraph 31 of the lease, the lessee is given the right to make alterations and improvements. Paragraph 9 (b) places a duty on lessee not to damage the premises in its ordinary use of it. The reasonable effect of reading paragraphs 9 (b) and 31 together is that the lessee may make alterations and improvements pro-

vided that it does not unreasonably damage or destroy the premises. The right contained in the lease to make alterations and improvements does not change the duty of the lessee to refrain from negligently damaging the premises. Therefore, the lessor may recover for wilful or negligent damages caused by the lessee.

The lessor may recover for fixtures and parts removed by the lessee which it failed to replace as was required by the lease. We interpret the language of paragraph 31 to mean that the lessee has a right to install its own fixtures such as lights and doors and leave them intact at the termination of the lease for such use as the lessor could make of them; but, having elected to remove these fixtures it must restore the premises as to that particular alteration or improvement substantially to their former condition. In the absence of such a duty the lessee could leave the premises devoid of any lighting fixtures, doors and windows. It is obvious from reading the lease from its four corners that the lessor intended and expressed the condition that the premises would be returned in a condition which would not make it unmarketable or untenantable.

The lessor may recover reasonable expenses incurred in removing the useless remains of alterations and improvements made by lessee. Under the terms of the lease if the lessee removes certain of an improvement's adjuncts rendering it useless for ordinary purposes such as leaving the wiring of a high voltage system after the outlets were removed, it is obligated by the lease to remove all of that particular alteration or improvement. Defendant contends that the restoration does not extend to removal of such parts and that it is not required by the lease to pay the cost of removal of the alterations or improvements which it abandoned. We do not agree. Such situation was contemplated by the lease and is governed by its terms. The word "restore" goes beyond mere patching

and plastering and extends to the removal of items detrimental to the use of the building. The lease insures that the premises be returned undamaged except for usual wear and tear. Therefore, plaintiff may recover as damages the reasonable cost of removing the abandoned remains of permitted alterations and improvements. What is reasonable and what is excessive is a question of fact which the arbitrators, as agreed upon, should determine. Defendant is not obligated to renew the building nor to rejuvenate an old building. If a fixture was old and was removed it may be replaced by one of equal vintage.

Lessor contends that lessee has an obligation to return the premises to the lessor in its prelease condition if it elects to remove any one particular alteration or improvement. We do not think the language of the lease is sufficiently broad to place such a duty on the lessee. To so hold would place an unreasonable burden upon the lessee for if lessee chose to remove one small alteration or improvement such as an office partition then it would have to completely restore the entire premises. This is clearly not what was intended. The reasonable construction of paragraph 31 is that if lessee desires to remove a particular alteration or improvement then it must restore the premises to its prelease condition so far as that particular item is concerned. If lessee wishes to remove an air conditioning unit, it must fill all holes, remove all devices and adjuncts related to that particular unit. However, in such case the lessee does not thereby become obligated to completely remove all improvements and alterations it places on the premises.

In accord with these conclusions of law the board of arbitrators shall determine factually into which category the alleged damages fall; also, whether the lessee has in fact returned the premises in substantially the same condition as it would have been prior to

the leasing, without the alterations, as determined by a reasonable person.

## Order

And now, June 25, 1964, after argument before the court en banc consisting of E. Arnold Forrest, P. J., Robert W. Honeyman, J., and Frederick B. Smillie, J., in accordance with the agreement of counsel, the questions of law having been resolved hereunder in favor of plaintiff, the court administrator is hereby directed to appoint a special panel of arbitrators, to be mutually agreed upon by the respective parties and their counsel, to determine the items, if any, and amount of damages, if any, for which recovery may be had by plaintiff based upon the conclusions herein.