## Barbour Estate

324

*Francis X. McCulloch,* for accountant.
*Leonard Shapiro,* for claimant.

BOYLE, P. J., September 10, 1964.—The question presented at the audit of the administrator's account is whether the estate of the deceased tenant is liable to the landlord for damages to a furnished rented room caused by the decomposition of decedent's body when his death from natural causes occurred about one week before his remains were discovered.

At the audit of the account of the administrator c.t.a., the landlord submitted a claim in the amount of $520.66; $45 of this is due for rent for the month of April 1963. The remainder of the claim, $475.66, is for the damages caused to claimant's property.

The record indicates that decedent died on April 23, 1963. His body was discovered about one week later in his room in the claimant's rooming house. Because of these facts the room and its furnishings were damaged as the claimant alleges.

The decedent was a tenant from month to month under an oral lease.

It is conceded that the death of decedent resulted from natural causes. There is no allegation or evidence that the death of decedent was self-inflicted or resulted from his negligence.

The claimant landlord asserts that the implied covenant requiring the tenant to restore the premises to the landlord in as good condition as when leased, reasonable wear and tear excepted, applies in this case and that the estate is liable for the damages suffered.

The administrator c.t.a. contends that the estate is not liable for the damages because:

(a) the death of decedent was an act of God;

(b) the death resulted from natural causes and was not caused by decedent's negligence;

(c) decedent having died before the damages occurred he could not have been guilty of a breach of the implied covenant to restore the premises unimpaired, except for reasonable wear and tear.

Pollard v. Shaffer, 1 Dallas 210, is cited by the administrator c.t.a. in support of his contention. In that case the lessee covenanted to keep the demised premises in good repair and to deliver them up to the lessor at the end of the term on March 1, 1778, in good repair. The breach alleged was that the lessee had not delivered up the premises at the end of the term in good order and repair; but that the roof, windows and floors of the rented sugar house were in decay, destroyed, etc.

The lessee pleaded performance of covenants and that an alien enemy, to wit, the British army, commanded by Sir William Howe, in September 1777, had invaded the City of Philadelphia, had taken possession of the leased premises and held the same until the end of the term of the lease and afterwards; and that during the occupancy of the premises by the British forces they had committed the waste and destruction. The Supreme Court held that the lessee was excused from his covenant to keep the premises in good repair and to deliver them up at the end of the term in good repair, etc., because the damage was inflicted by the act of an alien enemy and this was not within the contemplation of the parties when the lease was made. The court also stated, at page 215, that its opinion would be the same if the damage were caused by an act of God.

At page 211a, the court observed:

"It is also agreed, that where the *law* creates a duty or charge, and the party is disabled to perform it, without any default in him, and hath no remedy over, there he shall be excused."

In Earle v. Arbogast & Bastian, 180 Pa. 409, 416, it is held:

"Generally in the absence of an express covenant on the subject the law implies a covenant on the part of the lessee so to treat the demised premises that they may revert to the lessor unimpaired except by usual wear and tear, and uninjured by any wilful or negligent act of the lessee. The implied covenant does not however extend to the loss of buildings by fire, flood or tempest, or enemies, which it was not in the power of the lessee to prevent, and there is no implied covenant that the lessee shall restore buildings which have been destroyed by accident without fault on his part: Jackson and Gross' Landlord and Tenant, in Pennsylvania, sec. 964, 965; Taylor's Landlord and Tenant, sec. 343; Cooley on Torts, p. 335; Long v. Fitzimmons, 1 W. & S. 530; United States v. Bostwick, 94 U. S. 53."

See, also, Restatement, Contracts, section 457.

The case at bar is analogous in principle to Pollard v. Shaffer and Earle v. Arbogast & Bastian, supra. What happened in the case at bar was not within the contemplation of the parties when the oral lease was made. The damages were not the result of any act of negligence committed by the decedent.

There is also authority for the proposition that the death of a human person is an act of God: Shelley's Case, 1 Coke's Reports 227; Milam v. Mandeville Mills, 41 Ga. App. 62, 151 S. E. 672, 675; Central of Georgia Railway Company v. Hall, 124 Ga. 322, 52 S. E. 679, 684; Charleston & W. C. Railway Company v. Nixon Grocery Company, 142 Ga. 343, 82 S. E. 893.

The auditing judge holds with reluctance that this case presents a fact situation in which the court may not allow the claim for the damages which were sustained.

The separate claim for rent in the sum of $45 will be allowed.