**UNITED STATES GYPSUM CO.**

**v.**

**SCHIAVO BROTHERS, INC.**

**Civ. A. No. 74–3165.**

United States District Court,
E. D. Pennsylvania.

May 22, 1979.

Memorandum Jan. 15, 1980.

Michael M. Baylson, Duane, Morris & Heckscher, Philadelphia, Pa., for plaintiff.

John M. Elliott, Philadelphia, Pa., for defendant.

POLLAK, District Judge.

In December, 1974, United States Gypsum Co. commenced this landlord-tenant action, alleging that defendant-tenant Schiavo Brothers, Inc., failed to surrender the leasehold property on time and clear of debris. A ten-day non-jury trial was held in late 1975 and early 1976. In May, 1978,

Judge Fogel ruled in defendant's favor, filing an exhaustive opinion which concluded that defendant had not breached "either an express covenant to peaceably surrender the [premises] or an implied covenant to return the land in substantially the same condition as existed at the inception of the lease, (reasonable wear and tear excepted)."[1]  Pursuant to Rule 59 of the Federal Rules of Civil Procedure, plaintiff has moved for a new trial.[2]

1.  Judge Fogel's opinion is set forth at 450 F.Supp. 1291 (D.C.1978).

2.  Rule 59 provides in relevant part as follows: (a) Grounds.  A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States; and (2) in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of the United States.  On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.

3.  The map itself is reduced from a map introduced into evidence by stipulation of the parties.  The lines marking off Areas F, A', and A" were added by this Court so that the map could be a visual aid to the reader of this opinion; these added lines are not represented as being to scale.

## I.

Before considering the grounds of plaintiff's motion, it will be helpful to summarize Judge Fogel's findings of facts and conclusions of law.

In January, 1963, the parties to this litigation entered into a lease agreement for a tract of land located in Southwest Philadelphia and referred to throughout the litigation as Area F.  The map below shows its location.[3]

ESSINGTON AVENUE

F

A'

A"

Ⓐ

AREA = 23.3093 ACRES

Ⓑ

AREA = 2.3486 ACRES

Center Line of Philadelphia, Baltimore and Washington Railroad

Prior to 1963, Area F was leased by plaintiff to so-called "junk-car dealers" whose business it is to mine wrecked and abandoned automobiles for valuable parts. Under the January, 1963 lease, defendant assumed the role of master tenant responsible for the junk-car dealer subtenants. In August, 1963, a second lease was signed extending the leasehold property some 200 feet along Essington Avenue to a depth of approximately 100 feet. (This area is marked A' on the map.) Both 1963 leases contained a clause requiring the defendant to return the property as found, reasonable wear and tear excepted.

In 1966, plaintiff and defendant entered into a third lease, superseding and terminating the 1963 leases. The leasehold property was enlarged to encompass all of Areas A and B, parts of which were "below grade." The lease required the defendant to bring the land up to grade and authorized subletting once landfill was complete. Lease Paragraph 20 limited sublessees to persons engaged in the junk-car business.[4] The lease also provided for termination by either party upon 120 days written notice and required surrender of the premises peaceably on termination. But unlike the 1963 leases, the 1966 lease did not contain an express clause imposing on the defendant a duty to return the property as found.

Pursuant to this agreement, defendant undertook landfill operations and sublet to additional junk-car dealers. By 1972, landfill was complete, and dealers had subleased property on Areas F, A', and A'' and spread themselves without subleases onto at least some part of the remainder (the "back portion") of Area A. As they spread, the dealers left a trail of old car seats and tires—parts they found difficult to sell. In addition, the back portion of Area A attracted "fugitive dumpers" who favored it with their refuse.

In August, 1973, plaintiff gave defendant written notice of termination, effective January 1, 1974.[5] Defendant, in turn, notified the junk-car dealers who quickly formed an association to fight eviction. Faced with this opposition, defendant acted expeditiously to remove the subtenants by instituting eviction proceedings in Philadelphia Municipal Court. At a March 4, 1974 hearing, the Municipal Court gave the dealers until June to vacate the premises. One of plaintiff's attorneys was present at the hearing; but since his client was not a party to the eviction suit, he was there in observer status and took no part.

In the meantime, plaintiff had arranged for sale of the leasehold property to Swann Oil Company with closing set for June, conditioned on the removal of all accumulated debris from the property. It was not until September, however, that the last junk-car dealer vacated the premises. And left behind was a considerable accumulation of old cushions and tires and "material from fugitive dumping, which took virtually every imaginable form, from watermelons to dead cats." 450 F.Supp. at 1301. Plaintiff claims that it spent $144,500 to remove this debris before finally closing with Swann on September 26, 1974.

On the basis of these facts, Judge Fogel ruled as follows: (1) under Pennsylvania law, the 1966 lease contained an implied duty requiring the defendant to return the leasehold premises to the plaintiff at the termination of the lease in substantially the same condition as existed at its inception, reasonable wear and tear excepted; (2) Areas F and A' were in at least as good condition, when returned to plaintiff, as they were in at the inception of the lease in 1966; (3) in Area A'' (the portion of Area A leased after 1966 to the junkdealers), the debris, while substantial, was an inevitable

4. Paragraph 20 provides:

Subject to the written approval of Lessor's Works Manager, Philadelphia Plant, which shall not be unreasonably withheld, Lessee reserves the right and privilege to sublet that portion of the subject premises already filled to grade level and of no use to Lessee in conducting a landfill operation provided that subletting shall be only to so called "Automobile Wrecking Yards."

5. It appears from the post-trial briefs that sometime after August, 1973 the parties agreed to a one-month extension, postponing the termination date to February 1, 1974.

consequence of the junkdealer business—a business expressly contemplated by the 1966 lease—and accordingly, "constituted reasonable wear and tear in the context of the junk-car industry"; (4) as to the junk-dealer debris on the remainder of Area A, which defendant did not sublease to the dealers, but onto which they spread, the debris was also reasonable wear and tear "in the context of this industry"; (5) as to fugitive dumping on the back part of Area A, the defendant was not negligent in failing to take the expensive measures required to prevent this dumping and therefore, under Pennsylvania law, was not liable for breach of its implied covenant; and (6) return of the leasehold in littered condition did not breach the defendant's express covenant to surrender the premises peaceably.

## II.

### A.

Two of the arguments advanced by plaintiff in support of its motion for new trial have sufficient merit to warrant post-trial relief.

1. Plaintiff contends that the Court failed to rule on two of its damage claims: (1) its claim for rent from February 1, 1974, plaintiff's intended date of termination, to September 26, 1974, when plaintiff conveyed to Swann; and (2) its claim for loss of use of purchase monies under the agreement of sale with Swann. The thrust of both claims is that defendant should be held liable for damages caused by the subtenants who remained on the property after the expiration of the lease, and who thereby prevented plaintiff from (a) completing the sale to Swann on time, or (b) otherwise putting the property to some gainful use after defendant stopped paying rent. (Although characterized as separate items of damage, it would seem analytically more useful to view the two claims as alternative ways of describing the economic loss to plaintiff allegedly occasioned by plaintiff's inability to sell or otherwise utilize its land for a period of several months.)

Defendant does not dispute that these claims were tried and were before the Court,[6] but argues that Judge Fogel "specifically found that Defendant was not responsible for the subtenants' illegal refusal to timely vacate." My own reading of Judge Fogel's opinion yields a different conclusion. The opinion focused on the difficult question of liability for left-over debris, and not on the relatively straightforward question of liability for hold-over subtenants. As a result, while Judge Fogel did find that defendant acted expeditiously to remove its subtenants and that plaintiff's attorney did not object to the extension of time granted the dealers by the Philadelphia Municipal Court, he did not discuss whether, as a matter of law, such conduct relieved defendant of liability for damages caused by the hold-overs or estopped plaintiff from seeking such damages. Similarly, while Judge Fogel ruled that defendant did not breach the express covenant to peaceably surrender the premises, this conclusion was reached in the course of rejecting plaintiff's contention that the duty to surrender carried with it a concurrent duty to clean up the debris. Judge Fogel's opinion did not announce that defendant was free of responsibility for subtenants who remained on the premises after February, 1974.

In short, my reading of Judge Fogel's opinion does not permit me to conclude, as the Court of Appeals for the Seventh Circuit concluded in *Switzer Brothers, Inc. v. Locklin*, 297 F.2d 39, 45 (1961), that "[the] failure to enter findings with respect [to these claims] is tantamount to findings adverse to [the claimant]." Here, I conclude that the failure to enter findings on these two claims was oversight, and one which Judge Fogel would have been required to

---

**6.** Neither claim was clearly articulated in the complaint. But it is now "generally accepted that there may be no subsequent challenge of issues actually litigated, if there has been actual notice and adequate opportunity to cure surprise." *Kuhn v. Civil Aeronautics Board*, 87 U.S.App.D.C. 130, 132, 183 F.2d 839, 841 (1950); see also 6 Wright & Miller, § 1491; F.R.Civ.P. 15(b).

correct had he still been on the bench when plaintiff's motion was filed. As his successor, I am equally obliged to reopen the judgment, take what additional evidence may be necessary, hear argument on the law, and make findings of fact and conclusions of law in order to resolve these two claims. F.R.Civ.P. 63. Accordingly, the judgment is reopened for the purpose of adjudicating these claims.

■ 2. Plaintiff challenges Judge Fogel's conclusion of law that reasonable wear and tear to junkyard property includes a substantial accumulation of junkyard debris. Judge Fogel wrote:

> The uncontradicted evidence produced at trial established that junk car dealers were, in general, an extremely difficult group with whom to deal; that it was an arduous, if not impossible, task to keep them within the bounds of their obligations; that there was a natural expansion of debris beyond their lease boundaries; and that upon termination of a junkyard lease, the dealer rarely, if ever, cleared the property of accumulated debris beyond removing the scrap metal which could be sold. . . . We cannot ignore this evidence. When the lease was executed in 1966, both parties had had experience with junk car dealers; nevertheless, no provision was made in the lease with respect to the responsibility for clearing the debris which the dealers would inevitably produce. We cannot *imply* an obligation to return land wholly free of debris, when the evidence provides no support for a finding that junkyard property would normally be returned in this condition. 450 F.Supp. at 1306 (emphasis in original).

While it is surely correct that a court, in determining reasonable wear and tear, must consider the use to which property is put, it does not follow that the habitual behavior of junk-car dealers is reasonable *per se.* In tort cases the courts of Pennsylvania—whose law is controlling in this diversity action—have rejected the once fashionable notion that reasonableness is to be judged by the customary conduct of others

similarly situated. See *Thomas v. Arvon Products Co.,* 424 Pa. 365, 227 A.2d 897 (1967); *Donnelly v. Fred Whittaker Co.,* 364 Pa. 387, 72 A.2d 61 (1950); *Aquadro v. Crandall-McKenzie & Henderson, Inc.,* 182 Pa.Super. 435, 128 A.2d 147 (1956). And it is now well-settled tort doctrine that a defendant can be liable for failing to do what no one in his position has done before. See Hand, J., writing for the Court of Appeals for the Second Circuit on *The T. J. Hooper,* 60 F.2d 737 (2d Cir.) *cert. denied* 287 U.S. 662, 53 S.Ct. 220, 77 L.Ed. 571 (1932). As Professor Morris has put it, the "obvious inadequacy of a practice may cancel consideration ordinarily shown to a defendant who follows the example of his craft." Morris, Custom and Negligence, 42 *Col.L. Rev.* 1147, 1150 (1942). See also *Prosser, The Law of Torts* (4th ed.), Chapter 5, at 166–68 ("[t]here can certainly be such a thing as customary negligence"). The relevant inquiry in each tort case is whether the defendant's conduct conforms to standards that the community can fairly expect from its members; what people actually do is evidence of reasonableness, but not conclusive evidence.

The Pennsylvania courts have yet to consider whether principles analogous to these would apply, in a landlord-tenant dispute, in determining the reasonableness of a lessee's wear and tear. But it hardly seems likely that the Pennsylvania courts would give custom controlling effect: the fact that Judge Fogel found junkdealers are "in general, an extremely difficult group with whom to deal . . . and that upon termination of a junkyard lease, the dealer[s] rarely, if ever, cleared the property of accumulated debris," should not, without more, immunize them (or those responsible for them) from liability. Such behavior was not "reasonably necessary in order for the [junk-car dealers] to use the leased property in a manner that [was] reasonable under all the circumstances." Restatement 2d of Property, Landlord-Tenant, Section 12.2. And since a tenant is responsible to its landlord for impermissible physical changes made by its subtenant, see *Winans*

*v. Valentine*, 152 Or. 462, 54 P.2d 106 (1936); *Wilson v. Kruse*, 199 Or. 1, 258 P.2d 112 (1953); Restatement 2d of Property, Landlord-Tenant, Reporter's Note, Section 16–3,[7] Judge Fogel's conclusion that the defendant is without liability for the accumulated junkyard debris does not seem one that would be reached by Pennsylvania courts.

But the question remains whether I am empowered under Rule 59 to overturn Judge Fogel's conclusion because my view of the law is different from his. Defendant cites two leading treatises for the proposition that post-trial relief should be granted only where there is "manifest error of law." 6A *Moore's Federal Practice* ¶ 59.07. See also *Wright and Miller, Federal Practice and Procedure* § 2805 at 41. Indeed there is case authority that on *no* ground may a judge overrule a prior decision of another judge of the same court in the same case. *Sutherland Paper Co. v. Grant Paper Box Co.*, 9 FRD 422, rev'd on other grounds 183 F.2d 926 (3d Cir. 1950); *In re Torrence*, 177 F.Supp. 209 (D.Hawaii 1959); but see 7 *Moore's Federal Practice* ¶ 63.06 at 63–12.

█ Plaintiff in response argues that post-trial relief is required when the trial judge has committed an error of law "determinative of the result," and relies on *Ryans v. Blevins*, 159 F.Supp. 234 (D.Del.) *aff'd per curiam* 258 F.2d 945 (3d Cir. 1958). There, the action was tried to a judge who concluded that plaintiff was entitled to recovery under the doctrine of last clear chance. While a motion for new trial was pending, the trial judge retired; the motion was therefore argued to his successor who ruled that "[t]here was no room here as a matter of law for the application of last clear chance," and entered judgment for the defendant. On appeal, the Court of Appeals for this Circuit affirmed, writing:

We do not need to decide in this case under what circumstances a judge may reach different fact conclusions from those reached by his predecessor in the same case. If the question raised had to do with the credibility of a witness who had been seen by the first judge but not by his successor that problem would be presented and would have to be settled. But in this instance any difference in fact statements between those made by the first trial judge and his successor are [*sic*] not determinative of the case. The result reached upon reargument was correct regardless of any different interpretation of the facts.

This case, however, is more troublesome than *Ryans*. The legal issue here, unlike the settled doctrine of last clear chance, is a novel one on which prior case law provides little guidance. And my own view of the matter rests heavily on developments in the law of torts, where the parties are unable to bargain in advance about rights and duties as they obviously can in negotiating a lease. Nonetheless, I am persuaded that Judge Fogel's ruling was error entitling plaintiff to post-trial relief. See *Wright and Miller* § 2801, at 33–35. Accordingly, I will vacate Judge Fogel's judgment for defendant on the issue of liability for accumulated junkyard debris and enter judgment in favor of plaintiff on that issue.[8]

---

7. No Pennsylvania case has been brought to my attention dealing with the issue of a tenant's liability for impermissible physical changes made by its subtenant. While the venerable case of *Earle v. Arbogast*, 180 Pa. 409, 36 A. 923 (1897) (tenant not liable where tank exploded without negligence on his part) speaks broadly of a negligence requirement in any case charging breach of an implied covenant to return as found, I read *Earle* to mean only that Pennsylvania has wisely rejected strict liability for damages to the leasehold caused by accidents or extraordinary forces of nature. See *Restatement of Property, Second*, § 12.2 at 453–5.

8. *This decision in plaintiff's favor on the liability question makes it unnecessary to consider plaintiff's contention that Judge Fogel erred in his pre-trial ruling that all evidence of lease negotiations was inadmissible under the parol evidence rule. It should be noted, however, that Pennsylvania's parol evidence rule may have undergone change since the trial in this case. The plurality opinion in* Rempel v. Nationwide Life Insurance Co., *471 Pa. 404, 370 A.2d 366 (1977) augurs a quiet renunciation of Professor Williston's position on parol evidence, adopted by the Pennsylvania Supreme Court in* Gianni v. R. Russell & Co., *281 Pa. 320, 126 A. 791 (1924), in favor of Professor Corbin's views. (For a lucid discussion of the*

## B.

■ Plaintiff also contests Judge Fogel's conclusion that defendant cannot be held liable for fugitive dumping absent proof of negligence, citing *Thompson on Real Property* for the proposition that a tenant is strictly liable for all acts of third parties harming the leasehold. See *Thompson*, § 1273, at 372. But on this issue Judge Fogel's decision seems to me entirely sound. Professor Powell has traced the strict liability theory, which plaintiff champions, to antiquated procedural rules prohibiting a reversioner from directly suing third-party wrongdoers and has expressed "hope that no further American decisions will be based on a rule which ceased to have justifications in the last quarter of the seventeenth century." *Powell on Real Property* (abridged edition) § 640 at 689. Likewise, the *Restatements of Property First* and *Second* mandate a showing of negligence before a tenant can be charged with third-party wrongdoing. See *Restatement of Property*, § 146; *Restatement of Property Second Landlord-Tenant*, § 12.2 at 460–61. And while there is no Pennsylvania case directly on point, the decision in *Earle v. Arbogast & Bastion, supra* (tenant not liable where tank exploded without negligence on his part) suggests that Pennsylvania would follow the *Powell-Restatement* approach. Accordingly, I subscribe to Judge Fogel's holding that defendant is not liable for damages caused to the leasehold by fugitive dumpers.

### Conclusion

For the reasons set forth above, plaintiff's Rule 59 motion is granted in part: (1) judgment will be entered for plaintiff on the issue of defendant's liability for junk-car debris left on the premises after termination of the lease; (2) further proceedings will be scheduled to determine, (a) the damages plaintiff suffered as a result of the junk-car debris left on the premises; and (b) whether defendant is liable for damages caused to plaintiff by hold-over subtenants, and, if so, the extent of such damages.

difference between the two positions, see *Calamari and Perillo, Contracts*, Sec. 3–3, at 104–5.) The recent majority decision in *Atlantic Rich-*

## MEMORANDUM

### AFTER RECONSIDERATION

United States Gypsum Co. commenced this landlord-tenant diversity action in December, 1974, alleging that the defendant-tenant, Schiavo Brothers, Inc., had failed to (1) surrender the leasehold property on time, thereby delaying throughout most of 1974 plaintiff's implementation of a commitment to sell the property to a waiting purchaser, and (2) clear the property, when finally surrendered, of the automobile debris left by sub-tenant auto junk dealers. The case was tried before Judge Fogel in late 1975 and early 1976; and in May, 1978, Judge Fogel ruled in defendant's favor. 450 F.Supp. 1291 (E.D.Pa.1978). Following Judge Fogel's resignation, the case was reassigned to me and plaintiff moved for a new trial, under F.R.Civ.P. § 59. In its motion for a new trial, plaintiff contended, among other things, that Judge Fogel had failed to rule on two of its damage claims: (1) its claim for rent from February 1, 1974 to September 26, 1974, the period of asserted wrongful failure to surrender, and (2) its claim for loss of use of the purchase monies which plaintiff would have received sooner had plaintiff been able to convey the property on the date contemplated by the agreement of sale. Plaintiff also contended that Judge Fogel had erred, as a matter of law, in concluding that defendant was not liable for the cost of cleaning up the debris left by the sub-tenants. On May 22, 1979, I filed an opinion and order granting plaintiff's motion in part: (1) I determined that Judge Fogel had inadvertently failed to enter findings as to the claims for rent and/or loss of use of purchase monies even though these claims had been litigated, and I reopened the judgment in order to adjudicate these claims; and (2) I found for plaintiff on the issue of defendant's liability for junkyard debris. Following that decision, defendant moved for reargument of the

*field v. Razumic*, 480 Pa. 366, 390 A.2d 736, 741 n. 6 (1978), provides further evidence of this shift.

motion or, in the alternative, for certification of my order under 28 U.S.C. § 1292(b). On November 8, 1979, I heard reargument pursuant to defendant's motion. For the reasons set forth below, I conclude that my order of May 22 should be amended.

## I.

Before I turn to the merits, it may be helpful if I say something further on a preliminary question which I discussed briefly in my May 22 opinion—the authority of a judge to disturb a ruling made by the judge to whom a case was previously assigned.

In my prior decision, I relied on *Ryans v. Blevins*, 159 F.Supp. 234 (D.Del.), *aff'd per curiam* 258 F.2d 945 (3d Cir. 1958), which I felt to be substantial authority for departing in this instance from the well-established rule in this Circuit that "a judge may not overrule a prior decision of another judge of the same court in the same case." *Jurgenson v. National Oil & Supply Co., et al.*, 63 F.2d 727, 729 (3d Cir. 1933). Additional support for departing from the rule is to be found in the observations of the Court of Appeals, sitting *en banc*, in *TCF Film Corp. v. Gourley*, 240 F.2d 711, 713–14 (3d Cir. 1957):

> . . . there may be exceptional circumstances under which the rule is not to be applied. Such circumstances exist when the judge who made the original decision is not available to consider the application to rehear and reverse his decision. If the judge who made the decision . . . resigns from the court he obviously is no longer available to reconsider it and such reconsideration must perforce be by another judge if it is to be had at all. *Id.* 714.

1. The rule announced by Mr. Justice Fell for a unanimous court in *Earle v. Arbogast & Bastian* was perceived to be the rule prevailing in most state and federal courts, and particular reliance was placed on Chief Justice Waite's then recent opinion for a likewise unanimous court in *United States v. Bostwick*, 94 U.S. 53, 24 L.Ed. 65 (1877). Defendant cites two cases in opposition to the application of negligence rules in this case: *Philadelphia v. The Hertz Corp.*, 6 D & C 3d 17, 28–29 (C.C.P.1977) did

## II.

With respect to the merits, the first question to be addressed is whether I erred in overturning Judge Fogel's ruling that defendant was not liable for the cost of removing the junkyard debris. Defendant insists that I erred in looking to the law of negligence rather than to custom in the junkyard business to determine whether its failure to remove junk-car debris by the end of the tenancy breached an obligation to plaintiff imposed by the lease. Defendant argues that the use of a negligence norm imports tort doctrine into a contract suit. But the argument fails to take account of the governing rule announced by the Pennsylvania Supreme Court over eighty years ago: "Generally in the absence of an express covenant on the subject the law implies a covenant on the part of the lessee so to treat the demised premises that they may revert to the lessor unimpaired except by usual wear and tear, and uninjured by any willful or negligent act of the lessee." *Earle v. Arbogast & Bastian*, 180 Pa. 409, 416–17, 36 A. 923, 923 (1897); *see Hardware Mutual Ins. Co. of Minn. v. C. A. Snyder, Inc.*, 137 F.Supp. 812, 814 (W.D.Pa.1956); *see also* 22 P.L.E. § 237.[1]

Accordingly, I decline to amend my order on the issue of liability for accumulated debris.

## III.

In my decision of May 22, 1979, I also concluded that Judge Fogel's failure to enter findings on the claims for holdover rent and/or loss of use of purchase monies had been an oversight "which Judge Fogel would have been required to correct had he

look to industry custom to shed light on the term "gross revenues" as used in a lease; but nothing in the opinion casts doubt on the continuing vitality of the *Arbogast & Bastian* implied covenant, of which negligence is a key ingredient. *Vitex Manufacturing Corp. v. Caribtex Corp.*, 377 F.2d 795 (3d Cir. 1967) does not involve a lease, nor is it a Pennsylvania case, so it seems quite without application here.

still been on the bench when plaintiff's motion was filed," Memorandum of May 22, 1979, at pp. 51–52, and I re-opened the judgment to correct that oversight. In its motion for reargument, defendant contends that (1) these claims had not in fact been litigated, and (2) I improperly ventured outside the record in reaching the conclusion that I did. In the alternative, defendant argues that, to the extent that the two claims were litigated, Judge Fogel's silence as to these claims must be deemed a finding of fact against plaintiff. In opposition, plaintiff argues that these claims had been put before Judge Fogel in the Pre-Trial Order (Proposed Findings of Fact), at pp. 24 (¶ 32), 25 (¶¶ 35, 37) and 28 (¶ 5), and in the post-trial proposed findings. Plaintiff's Brief in Support of Proposed Findings of Fact and Conclusions of Law, Appendix A, at pp. 15–17 (¶¶ 47–59) and 21 (¶ 6). However, plaintiff has not shown, by way of attempted substantiation of the somewhat delphic proposed findings, that at any point in the ten-day trial there was any significant exploration of the issue of holdover tenants, as opposed to holdover debris.[2] Accordingly, I have concluded that the presentation of these two damage claims at the trial before Judge Fogel did not place them in so clear a focus as to warrant my concluding that (1) the claims were actually litigated, and (2) Judge Fogel erred in not ruling on them. It was, therefore, inappropriate for me to re-open the record as to these claims. I will vacate that portion of my May 22 order.

### IV.

These decisions leave only the amount of damages for junkyard debris clean-up still to be determined in this case. At the reargument, the parties gave differing estimates of the time that the remaining proceedings would take if my May 22 order were allowed to stand. Today's modification of the May 22 order should mean that the hearing on damages will be materially shorter than the several days estimated by defendant. At any rate, I am not persuaded that appellate review at this juncture would "materially advance the ultimate termination of the litigation," 28 U.S.C. § 1292(b), or that the issues possess the "uniqueness, exceptionality, or extraordinary importance" that would warrant appellate review now. *In re Japanese Electronic Products Antitrust Litigation*, MDL 189 (E.D.Pa., August 4, 1979), slip opinion at 11. Accordingly, I will not certify this order under § 1292(b).

2. Furthermore, as defendant points out, plaintiff's agent, Mr. Hansen, conceded on cross-examination that he had instructed another agent of the plaintiff, Mr. Starner, "not to accept any rental credits after January 1974" in favor of the defendant. (N.T. 3.70–3.71). This evidence was not contradicted, although the refusal of further rental credits was explained as designed "to make our position clear that the lease was terminated." (N.T. 3.70). This explanation, although not inconsistent with plaintiff's position that it was entitled to holdover rent or the equivalent, certainly does not suffice to show that it had not given defendant the impression it consented to the presence of the holdovers.